· FRANK & DARROW v. ARNOLD ET AL.

1. **Real Estate:** "OWNER" IS ONE WHO HAS TITLE. There is no distinction between ownership and title, as applied to real estate; but the owner is the one who has the title.

2. **Tax Title:** CANNOT BE ACQUIRED BY JUNIOR MORTGAGEE TO DEFEAT SENIOR MORTGAGE. The holder of a junior mortgage, even after he has gone into possession under a foreclosure sale, cannot acquire a tax title in his own name, or in the name of another person for his use, benefit or advantage, and thereby defeat the lien of the senior mortgage. And under the peculiar facts of this case, (fully set out in the opinion,) *held* that the tax title held by A. was in truth held for the use and benefit of S., a junior mortgagee in possession, and that the same should be set aside in equity at the suit of the senior mortgagees, and they allowed to redeem.

3. ———: FRAUDULENT COMBINATION OF BIDDERS. Where there is a fraudulent combination of bidders at a sale of land for taxes, and an agreement that they shall bid in turns, so as to avoid competition, a treasurer's deed for land bid off without competition under such agreement will be set aside as fraudulent.

*Appeal from Adams District Court*—HON. JOHN W. HARVEY, Judge.

MONDAY, DECEMBER 12.

ACTION in equity to set aside certain tax deeds, and to redeem. Judgment for defendants, and plaintiffs appeal.

*T. M. Stuart,* for appellants.

*Maxwell & Dale,* for appellees. ·

SEEVERS, J.—The pleadings are lengthy, and it is not essential, we think, to set them out, deeming it sufficient to state the claims of the parties, and the facts, as we find them, which are material.

I.   It is conceded by counsel for appellants that no person can question a tax title, unless he shows that he or the person under whom he claims had title to the real estate at the time it was sold; and counsel for the appellees claim that the plaintiffs have failed to establish a title in themselves or the persons under

1. REAL estate: "owner" is one who has title.

whom they claim. The land in controversy was sold for delinquent taxes in November, 1881. There is an agreed statement of facts, and we find the fact to be that in July, 1875, L. L. Parsons owned the land, and at that time executed a mortgage thereon to one Antes, which was foreclosed, and the premises sold in November, 1884, to the plaintiffs, and the same conveyed to them by the sheriff in December, 1885. It is also true that in April, 1882, the said Parsons conveyed the land by quitclaim deed to the plaintiffs. Whatever title Parsons had the plaintiffs now own, unless the tax title is valid. The agreed statement of facts states that Mrs. Parsons owned the land in 1875, and there is nothing tending to show that she conveyed the premises to any one, or that she had been in any manner divested of her title. If we understand the contention of counsel, which is doubtful, their claim is that there is a distinction between ownership and title. That is to say, that a person may own real estate and yet have no title. It occurs to us that there is no merit in this claim. We are unable to see the distinction claimed. When the word "owner" is used with reference to property, it means one who has title; and that is what the parties undoubtedly meant and understood when the agreed statement of facts was executed.

II. Mr. D. S. Sigler was made a defendant in the action brought to foreclose the mortgage under which the plaintiffs claim, because he was the holder of a junior mortgage on the lands. This mortgage was foreclosed, the premises sold to Sigler, and the same conveyed to him by the sheriff in 1882, and under such purchase and conveyance he took immediate possession of the premises, and he remained in possession thereof until after the tax deeds were executed. It is properly conceded by counsel for the defendants that, under the circumstances above stated, Mr. Sigler could not legally have acquired a tax title in his own name, or in the name of another person for his use, benefit or advantage. The treasurer in fact conveyed

*2. TAX TITLE: cannot be acquired by junior mortgagee to defeat senior mortgage.*

a portion of the land to Arnold, and another portion to Wid ner, so that the tax deeds on their face show that the tax title was vested in the persons just named. The claim of the plaintiffs is that in truth and in fact such title belonged to Mr. Sigler; that the persons above named held it for his use and benefit, or, at least, that he was beneficially interested therein. The determination of this question requires a full statement of the facts and circumstances as shown by the evidence. Mr. Sigler, or the bank of Corning, of which he is the owner, loaned money to different parties, which was secured by mortgages on real estate, and when lands were sold for delinquent taxes a clerk in the employ of Sigler, or the bank, attended such sales for the purpose of purchasing lands so mortgaged, for the protection of the mortgagee. The purchases were made in the name of Arnold, under an agreement between him and Sigler, which will be hereafter referred to. Widner, a clerk in the employ of Sigler, attended the tax sale of 1881, and purchased one tract of land in the name of Arnold, and the certificate was issued to the latter. Two of the other tracts in controversy were purchased by Gibson, and the other by Brown, and certificates were issued to them. These certificates were afterwards procured by Sigler, as he testifies, as agent of Arnold, and assigned to the latter. In 1884, the land was taxed to Sigler, and in December of that year Sigler acknowledged service of the expiration notice, in pursuance of which deeds were executed, in the following words: " I hereby accept full and complete legal service of the foregoing notice as the person in possession of, and also as the person in whose name the above land is taxed, waiving true copy and all illegalities."

The certificates were at all times in the possession of Sigler and were never seen by Arnold. Previous to the expiration of the tax certificate, Sigler wrote Arnold, "in substance that some tax certificates would soon expire, and recom mended that they be placed in the hands of certain attorneys for attention." Arnold so directed, and the expiration

notices were prepared by such attorneys. The agreement between these persons in relation to the purchase of the la. at tax sale, as testified to by Mr. Sigler, was as follows Arnold purchased lands through Sigler for several years, the purchases being made by some one employed by the latter, who furnished all the money to make the purchases, and received all the money paid in redemption of the land so purchased. There never has been a settlement between them, and Arnold has never paid Sigler interest on the money advanced. The reason for transacting the business in the name of Arnold was that Sigler " did not care to be known as a tax-title purchaser, and yet wanted to protect the interests of parties for whom he had made mortgage loans, and Arnold was willing to profit by the business in the way it was arranged." The arrangement commenced in 1880. The general scope of Sigler's authority was to sign Arnold's name in transacting the business. Arnold testifies that he is unable to state the amount of money furnished. " I paid Mr. Sigler interest on all he invested for me. The agreement was verbal with Mr. Sigler. He was to attend to the business, and furnish all the money required to carry on the business, and I pay him interest on the same. * * * Sigler did not tell me what lands he wanted to purchase in my name. He was to buy good lands for me. I left the entire matter with Sigler up to about September, 1885, or mostly so. Sigler did not write me first, and suggest that I write Maxwell & Dale. I never received such a letter. I have no letters received from Sigler in 1884 and 1885. I have none now, and never had any."

Arnold is cashier of a bank. Both he and Sigler testify that the latter was the agent of the former in relation to the investment in lands sold for taxes, and that the lands in question belong to Arnold, and so they do; that is, the legal title is vested in Arnold, that is, if the tax title is valid; but we do not understand either of them to testify in terms that there is not some understanding between them, if Arnold's title is

valid, that Sigler would receive a share of the profits from the transaction. We are impressed that there is such an understanding between these persons, whereby Arnold at the proper time will convey the land purchased by Gibson and Brown at the tax sale to whoever Sigler may direct, or that they are jointly interested therein. The business has been carried on for about five years, and there has been no accounting between them—no payment of interest; or, if there has been, as Arnold testifies, the amount so paid is not stated. The amount invested is unknown by Arnold, and yet he has agreed to pay interest thereon. He does not know the amount of lands purchased; never has made any inquiries; never received any letters in relation to the business during 1884 and 1885, and yet he is cashier of a bank, and presumably a business man. It cannot be true; and Mr. Sigler, it seems to us, when the evidence is viewed from a business standpoint, must not only be interested in these lands, but the principal in the transaction, and Arnold's name used for convenience only.

A witness testifies that Sigler told him, in a conversation about these lands, that any lands "not redeemed that went to deed, Arnold paid him a certain per cent on the money, and they divided up on the land." When all the facts and circumstances are considered, the evidence of this witness is greatly strengthened, and we think it creates a preponderance in favor of the proposition that there was such a conversation, although Sigler, while admitting the conversation, says he stated to the witness that he had "no interest in the land that went to the tax deed." This view is greatly strengthened when it is remembered that Sigler was in possession of the land under a foreclosure of a mortgage, and the premises had been conveyed to him by the sheriff, and that an action was pending in which he sought to compel the assignment of the mortgage under which the plaintiffs claim. See *Grant v. Parsons*, 67 Iowa, 31. Under these circumstances, Sigler accepted service of

the expiration notice, and not only made no effort to prevent, but seemingly, judging from the manner of accepting service, aided and abetted in the vesting of the superior title in Arnold, and yet he testifies that he would not have any claims on the land if he had succeeded in acquiring the title, as he was endeavoring to do.     Mr. Sigler further testifies that he does not know what Arnold would have done about it. Mr. Sigler undoubtedly means that he would not have any legal claims on the land; and, of course, he did not know what Arnold would have done until he acted.

III.   As to the land conveyed to Widner, we do not think he was a good faith purchaser, for two reasons:   He bid off the land at tax sale, in the name of Arnold, and after the service of the expiration notice, and after an attempt had been made by the plaintiff to redeem, by paying the required amount of money to the auditor, he claims to have purchased the certificate for $100, and it was assigned to him by Arnold in consideration of that amount of money.   But the understanding was that, if the attempted redemption proved effectual, the amount so paid was to be refunded to him.   This does not have the appearance of a *bona fide* transaction. There were 40 acres of land Widner claims to have purchased in this one-sided transaction.   We cannot think Arnold is thus, substantially, giving away 40 acres of land.   But, if wrong in this, the second reason is that there was an unlawful combination among the bidders at the time Widner purchased the land in the name of Arnold at the tax sale.   There is a fairly decided preponderance of the evidence in favor of the proposition.   The arrangement, or tacit understanding, which was carried out in substance by the bidders, was that they should take turns in making bids, and while this was in force Widner bid off this tract of land.   In the opinion of the other bidders he claimed the right to bid when it was not his turn.   This, using the language of a witness, made a "fuss," and, when the other Parsons lands were offered, there was competition; but when

3.——: fraudulent combination of bidders.

they were disposed of, the understanding was resumed.   More than one witness so testified, and their evidence, it seems to us, is entitled to full faith and credit, when the significant fact is considered that, although Widner testified in this case, he fails to controvert the evidence above mentioned, and is silent as to whether or not there was such understanding.

A judgment must be entered setting aside the tax deeds, and it may be entered here, or in the court below, as the plaintiff may elect, and the judgment of the district court is

REVERSED.