### HADDEN et al. v. DOOLEY et al.

(Circuit Court of Appeals, Second Circuit. May 12, 1896.)

1. APPEAL FROM ORDER CONTINUING PRELIMINARY INJUNCTION—DECISION.

On an appeal from an order denying a motion to dissolve an injunction pendente lite, restraining an execution sale of personal property, *held*, that the court of appeals could not determine questions of law which might depend upon undisclosed facts, or questions of fact upon ex parte affidavits of the character of those presented in the record; and that, as the questions arising were proper subjects for deliberate examination, the order would be affirmed, under the rule that, where a stay of proceedings will not cause too great injury to defendants, it is proper to preserve the existing state of things until the rights of the parties can be fully investigated.

2. SAME—AFFIRMANCE—RESERVATION OF RIGHT TO MODIFY.

Where an order refusing to dissolve an injunction pendente lite restraining a sheriff from selling certain silks on execution was affirmed, but it appeared to the court that a sale of the goods would be to the pecuniary advantage of both parties, *held*, that leave would be reserved to the court below to modify its order so that by consent of the parties the silk might be sold under the execution, after ample notice, and the proceeds placed in the registry to await a final decision.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Edward Winslow Paige, for appellants.

H. K. Twombley, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from an order of the circuit court of the United States for the Southern district of New York, dated December 12, 1895, which denied a motion to dissolve an injunction pendente lite, and continued it until the further order of the court. The original order restrained, pendente lite, the

sheriff of Kings county from selling the property of the Natchaug Silk Company in his possession as sheriff upon executions against said company in favor of John A. Pangburn or Michael F. Dooley, as receiver, and restrained Pangburn and Dooley from further proceedings at law against the property of said silk company in the state of New York.

An outline of the facts is as follows: On April '23, 1895, the Natchaug Silk Company, a Connecticut corporation, hereinafter called the "Silk Company," owed the First National Bank of Willimantic, a national banking association, hereinafter called the "Bank," located in Connecticut, over $300,000, and was entirely insolvent. In consequence of this indebtedness the bank suspended, and Michael F. Dooley was appointed its receiver on April 26, 1895, by the comptroller of the currency. On April 23, 1895, J. D. Chaffee, as president and general manager of the silk company, in consideration of and to reduce this indebtedness, sold to the bank 107 cases of manufactured silk, the value of which cannot be accurately ascertained from the affidavits, but which is said to be about $20,000. They were then, or had been, shipped to New York City, where they were subsequently taken by Dooley into his possession, and removed to Brooklyn. On May 8, 1895, he, as receiver, attached the goods by an attachment which was subsequently dissolved. On May 30, 1895, he sold and assigned to Pangburn, who is a resident of the state of New York, notes of the silk company, not paid by this transfer, amounting to about $67,000, for the nominal consideration of $200, which sale Dooley made by virtue of an order of the circuit court of the Southern district of New York, with the approval of the comptroller of the currency, for the purpose of enabling a suit to be brought in the state of New York, by a resident of that state, in his own name, against the silk company, a foreign corporation. Pangburn did bring suit on said notes against the silk company on June 1, 1895, in the proper state court, obtained judgment for the full amount thereof, and an execution, which was levied by the sheriff of Kings county upon these cases of silk. The sale was stopped by this injunction order. On June 6, 1895, the complainants, who are creditors of the silk company to the amount of about $22,000, brought suit against it in a court of the state of New York, and obtained an order of attachment, under which the sheriff of Kings county levied an attachment upon the same silk. On July 2, 1895, the complainants brought a bill in equity, upon which the injunction order now in question was issued, against Dooley, Pangburn, the silk company, and others, alleging that all their acts in connection with the silk were fraudulent, and praying for relief by injunction and otherwise. It thus appears that the bank and the complainants are creditors of the silk company, and that Dooley, as receiver of the bank, and the complainants, are each striving to obtain a firm hold upon the silk as a means of payment for their respective debts.

The complainants present questions of law or of fact at each step of the bank's proceedings. Two of them are of a character which cannot be determined upon the affidavits. The first is that Chaffee, as president and general manager of the silk company, which was in

fact and must have been known by him to be insolvent, had no authority to sell a large portion of the personal property of the company to one of its creditors in part payment of its debt. The decisions of the state of Connecticut apparently recognize that a president and unlimited general manager of one of its manufacturing corporations is vested with such power, and that such a transfer of personal property is valid, but the complainants assert that by the general commercial law a general manager of a private corporation is not clothed with this power. The second is that the notes which were sold to Pangburn had been paid by the silk company by renewals, which were not sold to him. The answer to the first question, which, as presented, is one of law, may be controlled by the facts which may subsequently appear as to any limitation of Chaffee's actual powers of which the bank had knowledge. The second question is purely one of fact; and while the affidavits of Angelo, which the complainants present, are of themselves insufficient to satisfy the mind as to the actual character of the transactions in regard to the notes, the question is one which deserves examination. It is obvious that a court of appeals cannot settle questions of law which may depend upon undisclosed facts, or questions of fact, upon ex parte affidavits of the character which were presented to the circuit court upon the motions in this case. It is also true that when the questions which naturally arise upon the transactions make them a proper subject for deliberate examination, if a stay of proceedings will not result in too great injury to the defendants, it is proper "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined" by evidence and proofs which have the merit of accuracy. Blount v. Societe Anonyme, 3 C. C. A. 455, 53 Fed. 98. The questions in this case are of the character which has been indicated, but we have been impressed with the fact that a sale of the silk will be for the pecuniary advantage of all the parties. If the goods remain in boxes for months, their pecuniary value will be greatly endangered. It would seem that by the consent of the parties the goods should be sold under the execution, after ample notice, and under circumstances which will insure proper prices; and the proceeds should be placed in the registry of the court, to await the final decision upon the merits, and for this purpose the circuit court is instructed that it has the power to modify the order. The order continuing the injunction is affirmed, with costs of this court, with instructions to the circuit court to modify the same upon application of the parties, as it may be advised.