CITY OF NEWTON et al. v. LEVIS.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1897.)

No. 879.

1. PRELIMINARY INJUNCTION.
   A city, after recognizing for more than eight years the validity of an ordinance upon the faith of which an electric plant had been constructed, poles erected, and wires strung at a large expense, suddenly repealed the ordinance, after the owner had mortgaged the property for a large sum, and threatened to remove the poles and wires and secure to itself the customers of the owner, its competitor in business. *Held*, that a preliminary

injunction was properly granted, the questions to be ultimately decided being serious and doubtful.

**2. SAME.**

A preliminary injunction to maintain the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

This is an appeal under the seventh section of the act to establish the circuit courts of appeals, approved March 3, 1891 (26 Stat. 826, 828, c. 517, § 7; 1 Supp. Rev. St. 904), as amended by the act of February 18, 1895 (28 Stat. 666, c. 96), from an interlocutory decree which granted a preliminary injunction on a bill exhibited in the court below by the appellee, Howard C. Levis. These facts were disclosed by the bill: On January 23, 1885, the appellant the city of Newton, a municipal corporation, made a contract with the Newton Electric Light Company to pay it $1,000 per annum for five years for furnishing that city with electric light for street purposes, and the electric light company furnished the light under the contract until April 1, 1888, when it assigned its contract to the Thomson-Houston Electric Company. On April 16, 1888, the city ratified the assignment, and requested the Thomson-Houston Company to fulfill the contract; and thereupon it furnished electric light to the city under this contract until it expired, on January 23, 1890. On January 20, 1887, the city of Newton enacted its ordinance, No. 129, by which it granted to H. M. Vaughan and his assigns the permanent and perpetual right to erect and maintain in the streets and alleys of the city of Newton, in such manner as would not obstruct the use of or travel over them, the necessary poles and wires to transmit electric light and power throughout the city. In reliance upon this franchise, Vaughan and the Thomson-Houston Company immediately purchased real estate in the city of Newton, constructed an electric plant thereon, erected poles throughout the city, strung wires upon them, and furnished the inhabitants of the city, and the city itself, with electric light and power. In the purchase of this real estate and the erection of these improvements, they expended more than $12,000 before 1889; and it was from this plant that the Thomson-Houston Company furnished light to the city, under the contract of 1885, from April 1, 1888, until January 23, 1890. In October, 1887, Vaughan assigned all his rights under the ordinance, and conveyed all his interest in the electric plant and in the poles and wires, to the Thomson-Houston Electric Company. In 1890 the city of Newton constructed an electric plant, and commenced, and has since continued, to furnish electric light and power to private consumers, and to light its own streets. On March 1, 1896, the Thomson-Houston Company sold and conveyed its electric plant, the land on which it was situated, all its poles and wires in the city of Newton, and all its rights and privileges under Ordinance No. 129, to the Newton Electric Company, a corporation, for $16,000; and the latter corporation made a trust deed of this property to the appellee, Howard C. Levis, to secure the payment of a debt of $10,000 on account of the purchase price of this property, which was evidenced by its promissory notes. In March, 1896, the population of the city of Newton was about 3,500. The city and the Newton Electric Company were active competitors with each other for the business of furnishing electric light and power to private consumers in that city, and had about an equal number of customers. Thereupon, on March 30, 1896, the city passed its ordinance, No. 211, which by its terms repealed Ordinance No. 129, and required the electric company to remove all its poles and wires from the streets of the city within 90 days. The electric company failed to do this, and the appellants, the city and A. K. Lufkin, its mayor, were about to cut down the poles and remove them and the wires of this company by force, when the appellee filed his bill in the court below. In addition to the foregoing facts, he alleged that the electric company was in-

solvent; that it had no property except the electric plant, the land on which it stood, its poles and wires, and that it was unable and unwilling to resist the destruction of this property by the city; and that the security held by the appellee for the payment of the $10,000 would be utterly destroyed unless the appellants were enjoined from taking their threatened action. No demurrer or answer was interposed to this bill, and on motion the court enjoined the appellants from interfering with the poles or wires of the electric company until the further order of the court. The appeal is from the decree granting this injunction.

N. T. Guernsey (O. C. Meredith and Wm. H. Baily were with him on brief), for appellants.

William Connor and James S. Cummins, for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

To state this case is to decide it. In reliance upon an ordinance of the city of Newton, whose validity that city had repeatedly and constantly recognized for more than eight years, an electric plant had been constructed, poles had been erected, and wires had been strung, at an expense of $12,000, and the owner of this property was supplying half the private consumers in this city with electric light and power. This owner had mortgaged this property to the appellee for $10,000. The city was its active competitor in business. Suddenly that city repealed the ordinance on the faith of which these improvements were made, and threatened to cut down the poles of this owner, to remove its wires, and to secure to the city itself all the customers of its competitor, and thus utterly to destroy both its business and its property. The appellee denied the right of the city to take any such action, and appealed to the court below to restrain it from destroying the property and the business until its right to do so could be adjudicated.

The granting or withholding a preliminary injunction rests in the sound judicial discretion of the court, and the only question presented by this appeal is whether or not the court below erred in the exercise of that discretion, under the established legal principles which should have guided it. The propriety of its action must be considered from the standpoint of that court. When the appellee made his motion for an injunction, grave questions of law were presented, which required careful and deliberate examination. The exhaustive opinion of the court below in this case, which was published in 75 Fed. 884, the opinion of this court upon cognate questions in Illinois Trust & Sav. Bank v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271, and the fact that counsel have devoted 200 printed pages to their discussion in this court, sufficiently demonstrate the importance and difficulty of these questions. But the court below knew that it must ultimately consider and determine these matters at the final hearing of the case. If, meanwhile, it refused to issue the injunction, the property and business of the electric company, and the security of the appellee, would be immediately destroyed. Its final decree, if it should be in his favor, would be utterly nugatory. If it granted the

injunction, it would do no more than to hold the parties in the same relation, and their property in the same situation, in which they had been, with the consent of the appellants, for more than eight years, and it would inflict no substantial loss or injury if the final decree should be in their favor. In other words, to grant the injunction was to preserve the property of all parties in statu quo, and prevent substantial damage to any one, whatever the final decree might be, while to refuse it was to permit the immediate destruction of the property of the electric company and the security of the appellee, to allow the infliction of irreparable loss upon them, and to render the suit and its decision useless, if the final decree should be in favor of the appellee. There can be no question of the duty of the chancellor to issue an injunction under such circumstances. The controlling reason for the existence of the right to issue a preliminary injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great, and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond, if the injunction is granted. A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted. Great Western Ry. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 597, 602; Glascott v. Lang, 3 Mylne & C. 451, 455; Shrewsbury & C. Ry. Co. v. Shrewsbury & B. Ry. Co., 1 Sim. (N. S.) 410, 426; Georgia v. Brailsford, 2 Dall. 402; Blount v. Société Anonyme du Filtre; 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98; Dooley v. Hadden, 38 U. S. App. 651, 20 C. C. A. 494, and 74 Fed. 429; Jensen v. Norton, 29 U. S. App. 121, 12 C. C. A. 608, and 64 Fed. 662.

The arguments and brief of counsel invite us to a consideration of the questions of law which must be finally determined upon a demurrer to the bill, or upon a final hearing of this case after answer. We have, however, found it unnecessary to decide these questions on this appeal, and we express no opinion upon them. They are of sufficient importance and difficulty to demand careful examination and deliberate consideration, and, whatever the ultimate answers to them may be, the preliminary injunction was rightfully issued, because it simply maintained the existing conditions, prevented irreparable loss to the appellee, and inflicted very slight, if any, loss or inconvenience upon the appellants. The decree below is affirmed, with costs.