## ALLISON v. CORSON et al.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1898.)

No. 1,044.

1. PRELIMINARY INJUNCTION—WHEN GRANTED.
   A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.

2. ENJOINING EXECUTION OF TAX DEED—PROBABILITY OF SUCCESS ON MERITS—TEMPORARY INJUNCTION.
   A first mortgagee brought an action to enjoin the assignee of a tax certificate from taking a deed to the mortgaged premises, alleging that the

taxes, a part of which were illegal, were levied after his mortgage was made; that until after the hearing in a suit to foreclose his mortgage, to which the second mortgagee was a party, the certificate was held by the second mortgagee, and then assigned. *Held,* that, it not being clear that complainant may not succeed upon the merits, a temporary injunction should issue pending the final hearing.

Appeal from the Circuit Court of the United States for the District of South Dakota.

R. J. Chase (Edwin Van Cise and C. A. Dickson, on brief), for appellant.

C. S. Palmer (Walter Anderson, on brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge.   This is an appeal by the owner of a first mortgage upon real estate from an order refusing to grant a preliminary injunction against the taking of a tax deed upon the mortgaged property by the assignee of a tax certificate which is based on taxes levied after the first mortgage was made, and which was held by the second mortgagee, from the time a suit to foreclose the first mortgage, to which he was a party defendant, was commenced, until after that suit was heard on the bill and his answer, and submitted for decision, and was then assigned to the appellee Henry T. Corson. The appellant filed his bill for the injunction on October 11, 1897. No demurrer or answer to it was interposed, but the appellees presented certain affidavits on the hearing upon the application for the injunction, and the bill and these affidavits disclose these facts:   On June 17, 1890, Fred D. Gillespie and his wife mortgaged to Fred T. Evans four lots, which Gillespie owned, in the town of Hot Springs, in the state of South Dakota, to secure the payment of his notes to Evans for $15,000; and Evans pledged these notes to the Western Home Insurance Company, a corporation, to secure his debt of $10,000 to it, which has never been paid.   This corporation has since become insolvent, and the appellant, John P. Allison, is the receiver of its property and effects.   On May 9, 1892, Gillespie and his wife mortgaged the same property to the Vermont Investment Company, a corporation, to secure the payment of notes or bonds to the amount of $15,000; and on December 7, 1893, the Vermont Investment Company assigned this mortgage to the appellee J. W. Russell, trustee, who held the mortgage to secure the notes or bonds which had been sold to third parties.   The assessor placed a valuation of $8,325 on this property for purposes of taxation, and the board of equalization of the county, without jurisdiction, unlawfully raised that valuation to $15,000 in 1892; and the levy of taxes for that year was made on that increased valuation, so that the tax levied on this property for that year was $420, when the lawful tax could not have exceeded $233.10.   The assessor valued this property at $10,600 in 1893, and the county board of equalization, without jurisdiction, unlawfully raised this valuation to $15,600 in 1893; and the levy of taxes for that year was made on this increased valuation, so that the tax upon this property was $600.60, when the lawful tax could not have ex-

ceeded $408.10. Nevertheless, on November 7, 1894, the premises were sold for these illegal taxes of 1892 and 1893 to the county of Fall River for the sum of $1,164.35, and a certificate of that sale was issued to the county. On January 31, 1896, J. W. Russell, trustee, who had raised the requisite money from those who owned the notes or bonds that were secured by the mortgage he held, bought with this money the certificate of this tax sale on the property; but he paid for it $246.20 less than its face value, on account of the illegality of the tax of 1893. On June 19, 1896, the appellant brought a suit in a court of the state of South Dakota of competent jurisdiction to foreclose the mortgage of June 17, 1890, to Evans, and filed in the proper office notice of the pendency of that suit. In that suit he made the county of Fall River and the appellee Russell parties defendant. Russell answered that the mortgage to Evans was paid, and that the mortgage of May 9, 1892, of which he was assignee, was the first mortgage upon the property. That case was tried and submitted to the court on April 19, 1897. On May 1, 1897, Russell assigned the certificate of tax sale which he held to the appellee Henry T. Corson for $600 in cash, and Corson's promise to pay $400 more on demand. On July 22, 1897, the court rendered a decree in the foreclosure suit that the mortgage to Evans held by the appellant was "a valid and subsisting lien from June 17, 1890, upon the premises therein described, prior to the lien of the mortgage to the Vermont Investment Company, and prior and superior to any and all claims of the defendants, and each of them, and that said defendants, and each of them, and all parties claiming under them, or either of them, since the commencement of the action, and the filing of notice of pendency thereof, June 19, 1896 (though such persons, if any, so claiming since said date might not be parties to the action), be forever barred and foreclosed of all right, title, interest, and equity of redemption in and to said mortgaged premises," unless they redeemed from the sale under that decree. The amount found due on the debt secured by this decree was $16,618.26, and the mortgaged property is worth only $5,000. The appellant was proceeding to advertise the property for sale under this decree, and expected to be the purchaser at the sale, when the appellee Corson took proceedings to obtain a tax deed thereof on the sale of November 7, 1894; and the appellant brought this suit to enjoin him from so doing, on the grounds that the appellee Corson stood in the shoes of the second mortgagee, Russell, who was a defendant in the foreclosure suit; that Russell, and all claiming under him, were barred by the decree in that suit from asserting any lien or title superior to that of the appellant's mortgage; that a second mortgagee cannot acquire a tax title to the mortgaged property, as against the first mortgagee; and that the taxes on which the sale rests were illegal, and the sale was void. When the application for the preliminary injunction had been heard on this state of facts, the court ordered that a temporary restraining order which had been issued be set aside and annulled "unless the complainant, John P. Allison, as receiver of the property of the Western Home Insurance Company, pay to the said defendant, Henry T. Corson, or C. S. Palmer, his attorney, the amount which the certificate of sale represents, which is

now held and owned by the said defendant Henry T. Corson, as the same appears from the complainant's bill of complaint, and defendant Corson's answer and return to the order to show cause," and refused to grant the injunction. The appeal challenges this order.

When the appeal was taken the court below properly continued the restraining order in force until the questions it presents could be decided by this court. The same considerations which led to this wise exercise of its discretion might well have induced that court to hold matters in statu quo, by the issue of the injunction, until a final hearing and decision of the case could be reached. No substantial loss or inconvenience would have been entailed upon the appellees by the allowance of the writ. Why, then, should not the injunction have been issued? Why should not the rights of these parties have been held where they were, without loss to any one, until the final hearing? The controlling reason for the existence of the right to issue a temporary injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during a litigation as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. Undoubtedly an injunction ought not to be issued unless substantial questions of law or fact, whose decision in favor of the moving party would entitle him to ultimate relief, are presented. If it is reasonably clear that he cannot ultimately succeed,—if his pleading discloses no cause of action or defense,—no injunction should be granted. But if the questions to be ultimately settled are serious and doubtful, and if the injury to the moving party will be certain, great, and irreparable if the motion is denied and the final decision is in his favor, while, if the decision is otherwise, the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond, if the injunction is granted, it is the duty of the chancellor to issue it. A preliminary injunction, maintaining the status quo, may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted. City of Newton v. Levis, 79 Fed. 715, 718, 25 C. C. A. 161, 163; Great Western R. Co. v. Birmingham & O. J. R. Co., 2 Phil. Ch. 597, 602; Glascott v. Lang, 3 Mylne & C. 451, 455; Shrewsbury & C. R. v. Shrewsbury & B. R. Co., 1 Sim. (N. S.) 410, 426; State v. Brailsford, 2 Dall. 402; Blount v. Société Anonyme du Filtre, 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98; Dooley v. Hadden, 38 U. S. App. 651, 20 C. C. A. 494, and 74 Fed. 429; Jensen v. Norton, 29 U. S. App. 121, 12 C. C. A. 608, and 64 Fed. 662.

When the application for the injunction was made in the case at bar, the lien of the foreclosure decree of the appellant was about to be divested by the issue of the tax deed to the appellee Corson. The appellant had the right, without leave of the court, to pay the amount which the certificate represented, and to obtain a discharge of its lien. Sess. Laws S. D. 1891, p. 66, c. 14, § 115. What he sought by his suit was an adjudication that this certificate was void, and a per-

petual injunction against the issue of a tax deed upon it. The refusal to issue the preliminary injunction unless he pays the amount represented by the certificate is, in effect, an adverse decision of his case before it reaches a hearing on its merits. It renders any subsequent adjudication futile, and any further prosecution of the suit nugatory. If he pays the amount represented by the certificate, its lien will be discharged, and there will be nothing further to litigate; and, if he refuses to pay it, the deed will issue, and his property will be conveyed, long before his case can be tried. In either event, if his claims are well founded, and the injunction is not issued, his rights will be seriously affected; and the loss he sought to prevent will be sustained before his case can be heard on its merits, and the perpetual injunction he seeks will come too late, in any event, to protect his rights or to avert his loss. On the other hand, if the injunction issues, and if the certificate of tax sale held by Corson is valid, and if the final decision is in his favor, he can then take his deed, and he will suffer no serious loss or inconvenience. The record presents a case in which the issue of the injunction can cause no substantial loss to any one in any event, while the failure to issue it may result in the loss of all the rights which the appellant claims in his suit. In such a case a temporary injunction should issue, unless it is reasonably clear that the claims of the moving party are unfounded.

Is it clear, then, from the facts presented on the application for this injunction, that the appellant will not ultimately be found to be entitled to a perpetual injunction, or to some relief in equity, against the issue of this tax deed? He claims that Corson is barred from any right or title to this land under his tax certificate by the decree in the suit for the foreclosure of the first mortgage upon it, to which Russell was a party defendant. Is it certain that he is not? Corson had no greater rights than Russell, because he bought of a defendant to that foreclosure suit while the suit was pending, and when a notice of its pendency was on file. Henderson v. Wanamaker, 79 Fed. 736, 738, 25 C. C. A. 181, 183. The bill in that suit contained a prayer that the mortgage held by the appellant might be declared a valid and subsisting lien from the date of the execution thereof, on June 17, 1890, and that the defendants and all persons claiming under them subsequent to the commencement of the action might be barred and foreclosed of all right, claim, lien, and equity of redemption in the mortgaged premises; and after an answer by Russell, and a hearing, that prayer was granted. When that suit was commenced, when Russell answered the bill, and when the case was tried, Russell held this certificate of sale, and the certificate was based on taxes levied after the date of the execution of the mortgage of the appellant. It is true that he did not plead it in his answer, but he might have pleaded it, and he might have had the validity and effect of his certificate adjudicated in that suit. The holder of a tax certificate or title acquired after the date of a mortgage is a proper party to a suit to foreclose it. Mendenhall v. Hall, 134 U. S. 559, 568, 10 Sup. Ct. 616. In an action between the same parties, or those in privity with them, upon the same claim or demand, a judgment upon the merits is conclusive, not only as to every matter offered, but as

to every admissible matter which might have been offered, to sustain or defeat the claim or demand. Cromwell v. County of Sac, 94 U. S. 351, 352; Board of Com'rs v. Platt, 79 Fed. 567, 571, 572, 25 C. C. A. 87, 91. "It is a universal rule of law that if the party fail to plead matter in bar to the original action, and judgment pass against him, he cannot afterwards plead it in another action founded on that judgment." Dickson v. Wilkinson, 3 How. 57, 61. In Hefner v. Insurance Co., 123 U. S. 747, 8 Sup. Ct. 337, one Bates, who was the owner of the premises, mortgaged them to the insurance company on August 23, 1870. On November 15, 1871, the county treasurer sold them to one Callanan for the taxes of 1870, and on December 1, 1874, he issued to him a tax deed thereof. On October 31, 1876, the insurance company filed a bill to foreclose its mortgage, and made Bates, the mortgagor, and Callanan, the owner of the tax title, parties defendant to its suit. The bill made no mention of the tax title, but contained the customary allegation that Callanan "claims some interest in and to a portion of the mortgaged premises, the exact nature of which your orator is unable to determine," and a prayer for "a decree of foreclosure against the premises hereinbefore described, against all of the before-named defendants, and that the right, title, and interest of each and every of the said defendants be, by decree of this court, forever barred and foreclosed," for a sale of the premises by a master, and for, "all and singular, such relief as your orator is equitably entitled to receive." A writ of subpœna was issued on this bill, and was served on Bates and Callanan. Bates answered, and Callanan made default. Thereafter and on May 21, 1877, a decree was rendered that the mortgage "is a lien upon the mortgaged premises, prior and paramount to the lien of each and every of the said defendants, * * * and that the right, title, and equity of redemption of each and every of the defendants in this suit be, by a sale of the said mortgaged premises hereunder, forever barred and foreclosed, and the purchaser at such a sale shall take the premises sold by title absolute; and such title shall relate back to the date of the execution of the mortgage to the complainant, to wit, the 23d day of August, 1870." After the decree was made the insurance company purchased the property under it; and Callanan conveyed his right and title to it under the tax deed to Hefner, who took possession of it. The insurance company thereupon brought an action of ejectment against him. He pleaded his title under the tax deed to Callanan. But the supreme court held that Callanan was a proper, if not a necessary, party to the foreclosure suit, that the court which rendered the decree in that suit had jurisdiction to determine the validity or invalidity of the tax title, and that the decree was "a conclusive adjudication, which cannot be collaterally impeached by Callanan or those claiming under him, that he had no valid title or lien of any kind against the plaintiff as mortgagee of the land in question, and as purchaser at the sale under the decree of foreclosure, and was rightly held to estop the grantees of Callanan to set up his tax title." The similarity between the essential facts in this case and those in the case at bar is marked and striking; and, under the rules and decisions to which we have adverted, it can hardly be truthfully said that it is so

clear that the appellee Corson is not estopped from asserting and perfecting his tax title by the foreclosure decree that that question is not worthy of serious consideration.

Another claim of the appellant is that the tax sale and the tax certificate are void, and entitle Corson to no deed, because a portion of the tax for which the sale was made was illegal. It is conceded that at least one-third of these taxes were levied without jurisdiction, and were illegal. But the land was sold for all the taxes, legal and illegal, for the single sum of $1,164.35; and a certificate of its sale for that amount was issued by the county, and has now been assigned to the appellee Corson. This sale was made on November 7, 1894. The $1,164.35 named in the certificate was the amount of these taxes, and the interest, costs, and penalty thereon to that date; and the only way the appellant could redeem this land from this sale was by paying this entire amount, and interest from the day of the sale. Sess. Laws S. D. 1891, p. 66, c. 14, § 115. It is true that before the appellee Russell purchased this certificate, on January 31, 1896, the illegality of these taxes had been discovered, and that on this account the county sold the certificate to Russell for $246.20 less than its face, and that Corson paid and agreed to pay only $1,000 for it in May, 1897, when it represented, and the amount required to redeem from the sale it recited was, more than $1,500. Id. pp. 66, 67, §§ 114–116. But it is also true that the attorney for the appellee Corson, in his affidavit in this case, and the certificate itself, demand the entire $1,164.35, and interest thereon from November 7, 1894, as a condition of its surrender or redemption. Can the purchaser or the assignee of the purchaser of a certificate of a sale for a tax that is in part legal and in part illegal, who has purchased it of the county at a discount on account of the illegality of a part of the tax for which the sale was made, demand of the owner of the land the payment of the illegal as well as the legal part of the tax, with interest at 12 per cent. per annum, and impose upon him the penalty of a forfeiture of his title if he fails to comply with the demand? An affirmative answer to this question is not so clearly right that it should be given without serious attention.

The appellant insists that if the appellees were not estopped by the foreclosure decree, and if the sale had been made for a legal tax, still they could not lawfully take a tax title upon the property, against him, because he held the first mortgage upon it, and the second mortgagee, Russell, is not permitted to divest the lien of a prior mortgagee by acquiring a subsequent tax title upon land which furnishes a common fund for the discharge of both their debts. In this view he is sustained by the following authorities: Trust Co. v. Wickhem (S. D.) 69 N. W. 14, 70 N. W. 654; Fair v. Brown, 40 Iowa, 209, 210; Eck v. Swennumson, 73 Iowa, 423, 424, 35 N. W. 503; Frank v. Arnold, 73 Iowa, 370, 371, 376, 35 N. W. 453; Black, Tax Titles, §§ 279, 280; Goodrich v. Kimberly, 48 Conn. 395, 396; Woodbury v. Swan, 59 N. H. 22; Smith v. Lewis, 20 Wis. 369, 373; Garrettson v. Scofield, 44 Iowa, 35, 37. In the last case, a second mortgagee, who pleaded his tax title in answer to a bill for a foreclosure of the first mortgage, was held to have no title to the premises, but to be entitled to receive from the

proceeds of the foreclosure sale the amount which he paid for the taxes, with interest at 6 per cent. per annum, but without penalties or costs. If these decisions are right, the appellees could not have recovered more than a reimbursement of the amount of legal taxes which Russell's purchase of the certificate discharged, with simple interest from the date of payment, if they had pleaded their claim under it in the foreclosure suit. They could not have recovered the amount represented by the certificate, the amount bid at the sale, and 12 per cent. interest per annum, nor could they have acquired title to the property as against the appellant. We will not extend this opinion by a discussion of the questions presented here. Enough has been said to show that the appellant did not fail, on his application for the injunction, to at least raise a serious question whether he would not be entitled on a final hearing to the perpetual injunction which he sought. This is not the time for the decision of the issues of law suggested by this record, and we forbear to discuss them. There is no answer to the bill, no testimony on the issues to be finally heard before us, and there has been no final hearing in the court below. We defer the expression of our opinion on the merits of the case until we are advised what issues it presents, and until the court below has rendered its decree upon the final hearing. Meanwhile the appellees should be enjoined from making or receiving a tax deed until the case is finally decided. Such an injunction will entail no substantial loss or inconvenience or risk of it upon the appellees, if they have a good defense to this suit, but will merely delay the execution of their deed a few months, during which the money they have invested draws more than 12 per cent. interest per annum, while to refuse it would cause the loss of all the rights which the appellant seeks to enforce if his claims are well founded. These claims are certainly not so frivolous and devoid of merit that they can be rightfully dismissed without a full hearing and serious consideration. The order appealed from is reversed, and the case is remanded to the court below, with directions to issue the preliminary injunction as prayed in the bill.