WESTERN UNION TEL. CO. v. PENNSYLVANIA R. CO. et al.

(Circuit Court, D. New Jersey. January 14, 1903.)

No. 89.

1. TELEGRAPH COMPANIES—MAINTENANCE OF LINE—POST ROADS—RIGHT OF WAY—CONDEMNATION—DESTRUCTION OF LINE—INJUNCTION.

Act July 24, 1866 (14 Stat. 221), authorizes any telegraph company to construct, maintain, and operate its lines over and along any military or post road of the United States, after filing its written acceptance of the obligations required by the act; and Rev. St. § 3964 (23 Stat. 3

[U. S. Comp. St. 1901, p. 2708]), declares that all railroads. of the United States are post roads. *Held*, that where a telegraph company which had accepted the act of 1866, and had maintained its line along a rail-road right of way for many years, had been directed by the railroad company to remove its line in accordance with the contract under which it was constructed, and had brought suit to condemn a right of way along such railroad, and the maintenance of the line during the pendency of such condemnation proceedings would not result in material damage to the railroad company, but its destruction would result in irreparable damage to the telegraph company, an injunction against such destruction, pending the suit to condemn, should be granted.

John F. Dillon, Henry D. Esterbrook, Rush Taggart, and R. V. Lindabury, for complainant.

John G. Johnson, James B. Vredenburgh, and Robert L. Lawrence, for defendant.

KIRKPATRICK, District Judge. Two suits have been brought in this court—the one at law to condemn lands of the defendant company sufficient for the construction, maintenance, and operation of the telegraph lines of the complainant, the Western Union Telegraph Company, under and in accordance with the provisions of a certain act of the Congress of the United States passed July 24, 1866 (14 Stat. 221); and the other in equity to restrain the defendant from interfering with the telegraph lines of complainant now erected upon and along defendants' right of way until the question of the complainant's right to condemn the said lands upon the payment of compensation has been determined by the court.

It appears by the record that the complainant company has maintained its telegraph poles and lines upon the right of way used by the defendant for more than 40 years, and that on September 20, 1881, an agreement was entered into between the complainant and defendant companies, to continue for 20 years from that date, in and by which, for the rent therein reserved, the said defendant company granted to said complainant company a right to place, maintain, and use upon the right of way of the Pennsylvania Railroad Company, and the roads owned, operated, or leased by it, a single line of telegraph poles, and to maintain thereon such wires as the telegraph company might from time to time elect. The said agreement also contained this provision:

"If no new agreement be made by the parties hereto, the telegraph company shall at the termination of this contract, or at any time thereafter, upon receiving written notice from the railroad company, remove within six months from the receipt of said notice all of its poles and wires and leave the property of the railroad company in good condition and free from the encumbrance thereof to the satisfaction of the general manager or other proper officer of the railroad company, and if not so removed the railroad company may remove them at the expense of the telegraph company."

In accordance with this provision, and after it had been determined that they would not renew the contract, the railroad company, on the 15th day of May, 1902, gave notice to the telegraph company that it must remove its poles and wires from their right of way on or before December 1st then next ensuing, and that if it failed so to do the railroad company would cause them, under the clause of the contract above referred to, to be removed. The bill recites (and the allegation

is substantiated by affidavit) that the wires which are strung over and upon the defendants' right of way are a part of a main trunk line, used by them in the interchange of communications for public and commercial purposes between people dwelling in different states of the Union; that their destruction would seriously interfere with such communication; that the lines have been erected at great cost, and that their worth in their present condition is in the neighborhood of $350,000; and that if the wires should be removed from the poles on which they are strung, and the poles cut down, their value would be less than $50,000. It is alleged that under this condition of affairs the pecuniary loss which would be inflicted upon the complainant by the destruction of its poles and wires, and the inconvenience entailed upon the general public, would be very great. Not only the injury would be one which, should the right which the complainants claim exist, they ought not to be required to suffer, but one for which there could be no adequate pecuniary recovery.

Upon this statement of facts, the complainant asked that the defendant company be restrained from removing its poles and wires from its (the defendant company's) right of way, in accordance with the strict terms of the contract, until their right of condemnation could be heard and determined; and the court granted a rule to show cause why such preliminary injunction should not issue according to the prayer of the said bill, which said rule now comes on to be heard.

Upon the case now presented, it appears that on July 24, 1866 (14 Stat. 221), Congress enacted that:

"Any telegraph company now organized or which may hereafter be organized under the laws of any state, shall have the right to construct, maintain and operate telegraph lines * * * over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law * * * but such lines of telegraph shall be so constructed and maintained as not to * * * interfere with the ordinary travel on such military or post roads."

That act further provided that, before any telegraph company should exercise any of the powers or privileges conferred by the act, such company should file its written acceptance with the Postmaster General of the restrictions and obligations required by the act.

This act, the bill alleges, was accepted by the complainant company on the 8th day of June, 1867, and since that time the complainant company has conducted its business in accordance with such restrictions and obligations.

All railroads of the United States are by law declared to be post roads (Rev. St. § 3964; 23 Stat. 3 [U. S. Comp. St. 1901, p. 2708]), and the right of way of the defendant company thereby became subject to the provisions of the act of 1866. While the question here at issue has not had judicial interpretation by the court of last resort, the statute of July 24, 1866 (14 Stat. 221), as applicable to post roads, has several times been before the courts for their construction. It has been held that, because of this law, one company having exclusive privileges under the state law cannot prohibit the erection of the telegraph lines of another company on the post roads of the United States, where such other companies have accepted the provisions of the act

of July 24, 1866 (14 Stat. 221), when those in control of such roads have given their assent. Pensacola Telegraph Company v. Western Union Telegraph Company, 96 U. S. 1, 24 L. Ed. 708. It has also been decided, in United States v. Union Pacific Railroad Company, 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319:·

"That no railroad company owning a post road of the United States over which interstate commerce is carried on can consistently with the act of July 24, 1866 (14 Stat. 221), bind itself by agreement to exclude from its roadway any telegraph company incorporated under the laws of a state, which accepts the provisions of the act and desires the use of that roadway for its line in such manner as will not interfere with the ordinary travel thereon."

The right of a telegraph company which has complied with the provisions of the law to enter a state, and erect its poles and lines therein, in accordance with the act of 1866 (14 Stat. 221), is recognized in the case of the Western Union Telegraph Company v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790.

If a state cannot, by legislative enactment, prohibit a foreign corporation which has complied with the act of 1866 (14 Stat. 221) from erecting its poles and wires over a post road belonging to a railroad company which has given its assent thereto, and if a railroad company cannot, by agreement with one telegraph company, bind itself to exclude another telegraph company from the use of its right of way, because it is a post road, how can a railroad company (being a post road) nullify the law by arbitrarily refusing to grant them a right which the law confers? Surely if the railroad company cannot bind itself by agreement to exclude the telegraph company, it cannot do so arbitrarily.

It would seem that inasmuch as the act of July 24, 1866 (14 Stat. 221), gave any telegraph company operating under state laws, and accepting the provisions of the act, the right to erect its poles upon the post roads of the United States, so, too, it prohibited the owners of such post roads from doing anything which might be hostile to the object contemplated by Congress, and render its act ineffectual.

Postal Telegraph Co. v. Oregon Short Line (C. C.) 114 Fed. 787, was a suit to condemn a right of way for the plaintiff over the road of the Oregon Short Line. All of the questions raised here were there discussed by the learned judge, and the Circuit Court held that such right of condemnation existed, under the acts of Congress before referred to, and proceeded to assess the damages incurred thereby. Sufficient time has not elapsed since the rendering of this decision to have it passed upon by the court of last resort, and it is not, therefore, binding upon this court. It is not necessary, however, that at this time this court should definitely pass upon that question of right. Enough has been said to show that the contention of the complainant of its right to condemn is not without force.

The only question now before the court, upon the return of this rule, is whether the defendants should be enjoined, pending the determination of the complainant's right to condemn, from interfering with the status quo, and doing to the complainant an injury which may be irreparable. The rule relating to the granting of injunctions in such cases is well settled. The jurisdiction of a court of equity,

among other things, is founded upon the right to prevent permanent injury for which pecuniary compensation is inadequate. It is not necessary that the court should determine that the complainant is entitled to a final award in its favor. It is enough that the case presented seems sufficiently meritorious to warrant the court in preserving the status quo until the real merits of the controversy have been finally determined. In Allison v. Corson, 32 C. C. A. 12, 88 Fed. 581, it was said:

"A preliminary injunction may properly issue whenever the questions of law or fact to be ultimately determined are grave and difficult, and the injury to the moving party will be immediate and certain and great if denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted."

It seems to me that the situation in the case at bar is analogous to that in City of Newton v. Levis, 25 C. C. A. 161, 79 Fed. 715, and that the remarks of Sanborn, Circuit Judge, apply here with peculiar force:

"But the court knew that it must ultimately consider and determine these matters at the final hearing of the case, and if, meanwhile, it refused to issue the injunction, the property and business of the electric company would be immediately destroyed and the final decree of the court, if it should be in its favor, would be utterly nugatory."

To grant the injunction asked for in this case would result in irreparable injury to no one, while the refusal so to do, from which there would be no appeal, would result in the destruction of complainant's property, for which they could receive no compensation.

It has been urged on the part of the defendants that the complainant should be required to vacate the premises of the defendant companies, in accordance with the terms of its contract. This, however, would but entail a great destruction in value of property, without compensatory benefit to any one. If the right of condemnation exists, complainants should not be subjected to that loss while exercising it. The defendants also say that they have entered into a new contract with another telegraph company, and that there is not sufficient room on their right of way to permit the maintenance and operation of the lines of more than one telegraph company. This question ought, I think, for the reasons above given, to await the final determination of the cause.

In view of the facts presented, and for the reasons above stated, I have decided to make permanent this injunction. In this way the defendants will have an opportunity to appeal to the next term of the Circuit Court of Appeals, while, should the rule be discharged, the complainant would have no appeal, and the injury to its property which is threatened would have been accomplished before the case had been properly considered.

Let the rule heretofore granted be made absolute.