### JOPLIN & P. RY. CO. v. PUBLIC SERVICE COMMISSION OF MISSOURI et al.

(District Court, W. D. Missouri, C. D. November 10, 1919.)

No. 215.

1. **Carriers ⚖18(6)—Showing held to authorize temporary injunction against enforcement of rate by state commission.**

An uncontradicted showing that an interurban railway was losing money, though it was charging a higher rate in its interstate traffic and traffic in another state than was permitted by a state Public Service Commission's order, is sufficient, in the absence of a satisfactory explanation why the business within that state should be more profitable than the other business, to authorize a temporary injunction against the enforcement of the order prescribing the rate.

2. **Injunction ⚖136(3)—Granted to maintain status where questions are difficult and damage would be irreparable.**

A temporary injunction may be issued to maintain the status quo pending a final hearing, where the questions of law and fact are intricate and difficult and where the rights of all parties can be easily safeguarded if the injunction is wrongfully issued, while the injury to complainant would be irreparable if the injunction were wrongfully denied.

In Equity. Suit by the Joplin & Pittsburg Railway Company against the Public Service Commission of the State of Missouri and others. On application for temporary injunction. Injunction issued.

Clyde Taylor and John Kennish, both of Kansas City, Mo., for complainant.

John T. Gose, Asst. Atty. Gen., and J. D. Lindslay, Asst. Counsel for Public Service Commission, for defendants.

Before STONE, Circuit Judge, and VAN VALKENBURGH and WADE, District Judges.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM.  Complainant is an electric railway company operating a standard-gauge railroad as a common carrier for hire, and is engaged in interstate and intrastate freight and passenger business, mainly between the cities of Joplin, Mo., and Pittsburg, Kan.  It operates 104.52 miles of track, of which 25.04 miles are in the state of Missouri, and 79.48 miles are in the state of Kansas.  In Kansas, by permission of the Kansas Public Utilities Commission, it charges a passenger rate of 2.5 cents per mile, and in interstate passenger business, by permission of the Interstate Commerce Commission of the United States, it charges a rate of 2.6 cents per mile.  Prior to the final action of the Public Service Commission of the state of Missouri, of which complaint is made, it charged for intrastate passenger business in the state of Missouri an average rate of 1.93 cents per mile.

On October 30, 1917, complainant filed with the Public Service Commission of the state of Missouri its application to be permitted to increase its intrastate passenger rates in Missouri to 2.5 cents per mile; the commission denied this application as made, but permitted a charge of 2.12 cents per mile; thereafter, upon motion for rehearing, complaint amended its application, whereby it asked permission to charge 3 cents per mile, instead of 2.5 cents per mile, for such passenger business.  This amended application was denied on the 8th day of September, 1919, and the commission reaffirmed its former order, fixing the value of the property involved in passenger business at $195,000, and refusing permission to charge in excess of 2.12 cents per passenger mile.

On October 1, 1919, complainant filed its bill of complaint praying an injunction restraining defendants from the enforcement of this order of the Public Service Commission upon the stated ground that the rate thereby established is unreasonable, unremunerative, and confiscatory.  A temporary restraining order was granted by the resident judge, and the application for interlocutory injunction came on to be heard before three judges in conformity with the provisions of section 266 of the Judicial Code (Comp. St. § 1243).

We are of opinion that a temporary injunction should be granted, and will state, as briefly as may be, the reasons which compel this decision.

[1] Complainant operates a homogeneous line of electric railway between two cities approximately 97 miles apart, located, respectively, in the states of Missouri and Kansas.  Compared to its passenger traffic, its freight business is negligible.  Taking the figures of the Public Service Commission, or uncontroverted figures of complainant, as a basis, the value of the entire property is $3,785,000.  The excess of total operating income over total operating expenses is said to fall far short of the sum necessary to pay its fixed charges, including interest upon its conceded bonded indebtedness.  In any event, the claim that no substantial return upon its total investment is possible under existing rates stood undisputed at this hearing.  The commission fixed the value of the intrastate passenger property in Missouri at $195,000, computed the gross income therefrom to be $43,002.94, the operating expenses at $33,528.11, leaving a net profit on operations of $9,474.83; a gross re-

turn of 4.8 per cent., at the existing passenger rate of 1.93 cents. Fixing 7 per cent. as a reasonable return, the commission concedes that complainant should be permitted to earn in Missouri in intrastate passenger business an additional amount of $4,175.17, which it assumes may reasonably be expected from the rate of 2.12 cents per mile. It is not deemed necessary to restate in detail the undisputed figures adduced at the hearing; but it will be sufficient to state that the increased amount thus expected to be derived from passenger traffic, if realized, would inappreciably affect the large deficit suffered annually upon the system as a whole.

It will be observed that the valuation assigned to the Missouri intrastate passenger business is distinctly insignificant as compared with the valuation assigned to the system as a whole. The Missouri mileage is approximately one-fourth of the whole and one-third of the mileage in Kansas. The gross income from Missouri intrastate passenger traffic is likewise insignificant, when compared with the total gross operating income of $665,000. That this distinctly Missouri business, forming such a small part of the complex whole, should be at once so small in volume and so disproportionately profitable, challenges acceptance. We have before us at this hearing no facts from which such an unlikely result is made either apparent or probable; nor, in the nature of things, could such a situation be revealed, if at all, except upon a fuller hearing on the merits. No comprehensive view of the workings of the entire system, its freight business, its passenger traffic, interstate and intrastate, in Missouri and Kansas, is presented. No wide difference is disclosed between the operations of the system in the two states, and between the two states; and yet it would appear that the road is operating at a loss in its interstate business at a rate of 2.6 cents per passenger mile, in its Kansas intrastate business at a rate of 2.5 cents per passenger mile, and in both, combined with the Missouri intrastate business, at existing rates. The commission itself seems to have been sensible of this incongruity, because in its opinion it says:

"The probable explanation, however, of the greater profit of intrastate over interstate traffic on the Joplin & Pittsburg, as found by commission accountants, is due to the fact that a higher rate per mile obtains in the first, second, and third stops out of Joplin. Traffic there is exceptionally dense, and this fact is probably the explanation of the increased return from intrastate traffic."

But this cuts both ways. It is claimed by the company that under the previous average rate of 1.93 cents per mile there were established zones out of Joplin, as the commission states, where a higher rate per mile obtained, and that there, as is said, population, and hence traffic, is more dense; that under the 2.12-cent rate these zones are abolished, and therefore that the new rate will produce no more revenue than the old.

The commission itself admits that the question of apportionment of property values is always a complex problem, and any method of apportionment is more or less arbitrary. When, therefore, such arbitrary methods are employed, and the results appear, sufficiently at least, to be widely out of expected keeping and proportion, justice demands clos-

er scrutiny than can be accorded at any summary hearing. It would manifestly be out of place here to disapprove the methods and standards adopted by the commission and its experts; but it may be pointed out that it appears upon the face of the report that great, if not undue, emphasis was laid upon the original cost of the property thus somewhat arbitrarily assigned to intrastate passenger traffic at a period greatly antedating that with which this investigation must deal; nor can we say that the present period of high prices is so temporary or abnormal that it may practically be disregarded in arriving at the value of complainant's properties. No one can say what degree of depression may ultimately come, but it is reasonably certain that the cost of the properties now under consideration will never again approximate figures prevailing in the years before the world war.

[2] It is before us that the Interstate Commerce Commission upon this same road deemed 2.6 cents per mile a reasonable rate, and that the Kansas Public Utilities Commission, after hearing, fixed 2.5 cents per mile as a rate reasonable for Kansas intrastate business. It implies no disrespect for the Public Service Commission of Missouri when we say that the findings of these first-named commissions, upon properties so similarly situated, are at least persuasive and entitled to much consideration at a hearing of this nature. The Circuit Court of Appeals for this circuit has repeatedly announced the rule which should govern us in a situation such as is here presented:

"A preliminary injunction, maintaining the status quo, may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted." Allison v. Corson, 88 Fed. 581, 32 C. C. A. 12; City of Newton v. Levis, 79 Fed. 715, 25 C. C. A. 161.

It is our judgment that a temporary injunction should be granted upon condition that complainant, until further order herein, does not charge in excess of 2.5 cents per mile in its Missouri intrastate passenger business outside of incorporated cities, which rate accords with the original application of complainant, and also with the judgment of the Kansas Public Utilities Commission within its jurisdiction, and upon the further condition that complainant shall issue to each passenger, so paying fare fixed in such schedule, a receipt reciting the fact that said passenger so paying such fare is, conditioned upon final order herein, entitled to receive from complainant the difference between the rates heretofore in effect and those being charged by virtue of the order entered hereunder. Complainant will further be required to keep intact, under separate deposit in the Commerce Trust Company of Kansas City, Mo., all such excess so collected, to await the final order of the court herein; such funds shall be under the exclusive control of this court, and in case the final order herein shall be in favor of the defendants, the same shall be distributed to all claimants entitled to participation therein, under the exclusive direction and orders of this court, for which jurisdiction shall at all times be retained. Thus the

loss or inconvenience to patrons, if any, will be comparatively small, insignificant, and susceptible of substantial compensation; whereas, should this writ be denied, and final decree be rendered for complainant, its loss would be great and irreparable.

It is further our judgment that this case should be prosecuted to final hearing or adjustment without unnecessary delay, and the resident judge, before whom further proceedings will be had, will, upon application, make further appropriate orders to that end.