## STATE OF SOUTH CAROLINA v. PORT ROYAL & A. RY. CO.

(Circuit Court, D. South Carolina. June 10, 1893.)

**1. REMOVAL OF CAUSES—FEDERAL QUESTION—INTERSTATE COMMERCE.**

The state of South Carolina filed a bill in one of its own courts, alleging that the corporation made defendant therein was chartered by the state to build, maintain, and operate a railroad to facilitate communication between the interior and the seaboard; that since it was built the Central Company, a Georgia corporation, and a competitor of defendant, had purchased enough of the stock and bonds of defendant to give it voting control of the corporation, which power it had used to divert the business of defendant, injure its property, and crush competition; that the Central Company had no power under its charter and the laws of Georgia to purchase and hold stock in defendant corporation, and that the latter was disabled to fulfill the purposes for which it was chartered; and it prayed that such holding by the Central Company be declared ultra vires and void, and that defendant's charter be forfeited. The petition for removal alleged that the Central Company was an instrument of interstate commerce, and that for the purposes of such commerce, and under the interstate commerce clause of the constitution and the laws passed in pursuance thereof, it had power to purchase and hold defendant's stock, and control its operation. *Held*, that the determination of the controversy thus developed involves the construction of the constitution and laws of the United States, and so presents a federal question.

**2. SAME—PARTIES—CORPORATION.**

It cannot be objected to the right of removal thus arising that the Central Company is not a party to the suit, and that its right cannot be affected by its decision, for the defendant corporation represents every stockholder in it, and, if the suit be successful, every share of stock, including that held by the Central Company, becomes valueless and nonexistent.

**3. SAME—IMPAIRMENT OF CONTRACTS.**

The bill alleged that such holding of stock by the Central Company was ultra vires and void because a certain provision of the Georgia constitution forbade the legislature to grant such power to any corporation where its effect might be to lessen or destroy competition. The petition for removal claimed that this impaired the obligation of the contract embodied in the Central's charter, which was granted before this

provision of the constitution took effect. *Held*, that this also presented a federal question, although the supreme court of Georgia had theretofore decided that the charter did not confer the right claimed.

In Equity. On motion to remand. Suit by the state of South Carolina against the Port Royal & Augusta Railway Company to forfeit defendant's charter. Motion denied.

D. A. Townsend, Atty. Gen., for the State.

A. C. King, W. I. Verdier, and A. T. Smythe, for the motion.

H. A. M. Smith, Lawton & Cunningham, and J. Ganahl, opposed.

SIMONTON, District Judge. The complaint in this case was filed in the court of common pleas for Beaufort county, in the state of South Carolina. A petition for removal of the cause into this court was filed by the defendant, with the bond required by law. It is said that the state court refused to grant the order of removal. A transcript of the record, however, has been filed in this court, and the cause has been docketed here. The present motion is to remand it to the state court. The ground upon which it is based is that the record does not present a case arising under the constitution and laws of the United States. If this be so, the cause must be remanded. Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. Rep. 799.

Whether a suit is one that arises under the constitution and laws of the United States is determined by the questions involved. If from them it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States or sustained by the opposite construction, then the case is one arising under the constitution or laws of the United States. Cooke v. Avery, 147 U. S. 385, 13 Sup. Ct. Rep. 340. The right of removal does not depend upon the validity of the claim set up under the constitution or laws of the United States. It is enough if the claim involves a real and substantial dispute or controversy in the suit. Southern Pac. R. Co. v. California, 118 U. S. 112, 6 Sup. Ct. Rep. 993. Nor is it necessary to sustain this right of removal that no other questions be involved than the federal question. "In Railroad Co. v. Mississippi, 102 U. S. 135, it was decided that a suit brought by a state in one of its own courts against a corporation of its own creation can be removed to the circuit court of the United States if it is a suit arising under the constitution and laws of the United States, although it may involve questions other than those which depend on the constitution and laws." Southern Pac. R. Co. v. California, supra; Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. Rep. 437. In seeking the determination of the question whether the case is one arising under the constitution or laws of the United States, we examine into the record, and must find the answer there only. The record is the complaint and the petition for removal. State v. Coosaw Mining Co., 45 Fed. Rep. 804, and cases quoted. The question is also decided upon the facts and reasons stated, and not simply upon conclusions of law, or the assertion that a federal question is relied upon. Milling Co. v. Hoff, 48 Fed. Rep. 341; Gold,

etc., Co. v. Keyes, 96 U. S. 201. It must also clearly appear that a federal question is involved among the issues. State of Iowa v. Chicago, etc., Ry. Co., 33 Fed. Rep. 392. This court must not interfere with the action of state courts unless the rights of the party seeking its jurisdiction be made out clearly and unmistakably from the record. Id. Such are the principles of law governing this case.

The complaint begins with a statement of the creation and history of the defendant corporation, by which it appears that it was originally incorporated in the state of South Carolina, and that there was granted to it a charter in the state of Georgia; that its capital stock is 7,500 shares of $100 each, a share being entitled to one vote; that in 1878 two series of bonds were issued,—sinking fund bonds and general mortgage bonds,—the general mortgage bonds being entitled to one vote for each $100, making a voting constituency of 7,500 on account of stock and 15,000 on account of bonds; that the corporation possesses its existence under the acts and laws of the states of South Carolina and Georgia alone; and that its entire right and object of existence is limited and governed by the grant of these states. It then states that the object of these grants was the construction and maintenance of a public highway from the harbor of Port Royal to the city of Augusta, and incidentally to open communication between the interior and the sea. That this purpose was fulfilled, and the ends sought were obtained and promoted, until the lawful ownership and control of the Central Railroad & Banking Company of Georgia was obtained over this defendant corporation. The complaint then goes on and gives a short sketch of this Central Railroad & Banking Company of Georgia. That it is a railroad corporation under the laws of Georgia, engaged in operating a large number of railroad lines, owned, leased, and otherwise controlled by it in the states of Georgia, South Carolina, and elsewhere; owning also and controlling the Ocean Steamship Company, and lines of steamships operated by it between Savannah, Ga., and the ports of New York, Philadelphia, and Boston, said lines consisting of a number of steamers engaged in the freight and passenger business. It may be noted by the way that this means largely engaged in interstate commerce. That in a part of this business it draws business from territory also tributary to the Port Royal & Augusta Railway Company, and to that extent is its competitor. That in 1881, in furtherance of a scheme to get control of all competing lines, the Central Railroad & Banking Company obtained by purchase and otherwise a part of the stock in the Port Royal & Augusta Railway Company, and a part of the bonds, with voting power, eventually getting 4,015 shares of stock and $1,176,000 worth of the bonds. Thenceforward it dominated this company, ran it in its own interest, diverted a large part of its business, abandoned the use of valuable terminal property, and generally injured it to a great extent, disappointing the purposes for which it was chartered; in other words, depressing and crushing a competitor. The complaint then charges that this purchase and holding of this stock and these bonds by

the Central is contrary to public policy and void, because it was intended to defeat and lessen competition, and has in fact done so; and that for this reason the Port Royal & Augusta Railway Company is faithless to the trusts confided to it, and no longer does or can perform its duties under its charter, and, controlled and operated as it is by the Central Railroad & Banking Company in its own name, but for the use of the latter, it should no longer be permitted to enjoy its franchises. The complaint then charges that this Central Railroad & Banking Company, a corporation under the laws of Georgia, has no rights but those conferred on it by the laws of that state or by its charter; that the purchase and holding of this stock and these bonds is unlawful, inasmuch as it is unauthorized by this charter. It is further unlawful because obnoxious to article 4, § 2, par. 4, of the constitution of Georgia, in effect depriving the general assembly of that state of power to authorize any corporation to buy shares of stock in any corporation in that state or elsewhere, which may have the effect or intent to defeat or lessen competition or to encourage monopoly; that, thus forbidden by the laws of its own state to hold these stocks and bonds, it is equally illegal and forbidden for it to hold them in the state of South Carolina, whose laws and public policy do not authorize this holding of these stocks and bonds; and again, all this is pressed as the reason for the forfeiture of the charter of the Port Royal & Augusta Railway Company. The first prayer of the complaint is that the holding and ownership of the shares of the stock and bonds with voting power of the Port Royal & Augusta Railway Company by its rival and competing line, the Central Railroad & Banking Company, be declared to be ultra vires, illegal, and unauthorized, and against public policy and void.

It is clear from this summary of the complaint that it proceeds upon the ground that the Port Royal & Augusta Railway must forfeit its charter because the majority of its stock and bond voting power is held by the Central Railroad & Banking Company, for the reason that this holding is ultra vires, not authorized by its charter or the laws of Georgia or the laws of South Carolina, especially because it is a competitor of the Port Royal & Augusta, and interested in and in fact crippling it. The petition addresses itself to these questions. It asserts the right of the Central Railroad & Banking Company to hold this stock, and rests this right upon the interstate commerce clauses of the constitution, and the laws passed thereunder. The petition, in effect, denies that in testing the rightful holding of these stocks and bonds we must look solely to the charter and the laws of the two states; that it can be maintained under interstate commerce law, and that for the purposes of interstate commerce such holding is lawful. The validity of this position depends entirely upon the construction to be given the constitution and laws of the United States. It must be met and decided, not only as one of the issues, but as the controlling issue in the case. The counsel for the plaintiff contends that there is no evidence whatever in this record that the Central Railroad & Banking Company is engaged or is authorized to engage in inter-

state commerce. That it was chartered to construct a road from Savannah to Macon, and afterwards was authorized to go to Atlanta. But the complaint itself, in its sixth paragraph, alleges facts which demonstrate that it is engaged in interstate commerce by land and by sea, and with the largest ports on the Atlantic. It is also urged with great force that the Central is no party to this case, and that its rights would be neither invaded nor affected by any decision in this case. For the purposes of this suit the corporation defendant represents every stockholder in it. If the suit be successful, every share of stock becomes valueless and nonexistent. Whether this case would be res judicata as to the reasons for this forfeiture—the right of the Central to purchase and hold stock and bonds of this character—may well be doubted; but the fact that the stock will be forfeited in the event supposed cannot be doubted. Besides this, one of the specifications of the crime charged against the Port Royal & Augusta Railway Company is that the majority of the voting power in the corporation is held by the Central, and that this holding is ultra vires, null and void. This is reiterated and gravely pressed in the complaint, and is charged as a misuse and perversion of its franchises, and the ground for their forfeiture. It is necessary for its defense that it should meet and refute this charge; and if it can show such refutation it is not only its right, it is its duty, to do so.

The other question raised in the petition as a ground for removal is that the obligation of a contract is sought to be impaired by this complaint. The complaint charges that the purchase and holding of these stocks and bonds by the Central Railroad & Banking Company is illegal and void, among other reasons, because it is obnoxious to article 4, § 2, par. 4, of the constitution of the state of Georgia, adopted in 1877, which is in these words:

"The general assembly of this state shall have no power to authorize any corporation to buy shares or stock in any corporation of this state or elsewhere, or to make any contract or agreement whatever, with any such corporation which may have the effect to defeat or lessen competition in their respective business, or to encourage monopoly; and all such contracts shall be illegal and void."

The position of the defendant is that under its original charter, approved 20th December, 1832, the Central Railroad & Banking Company had the power to buy, hold, and sell real and personal estate,   *   *   *   and to do all lawful acts properly incident to a corporation, and necessary and proper to the transaction of the business for which it is incorporated; that the use made of the provision of the constitution of the state of Georgia above quoted, and set out at large in the complaint, is to repeal and annul this right; that its charter is a contract, and that, if the effect sought in the complaint be given to this provision of the constitution of the state of Georgia, it will defeat and annul and so impair this contract. To this the plaintiff replies that the constitution of the state of Georgia in express terms disclaims any interference with existing contracts, and declares that its provisions shall not apply to them. Article 4, § 2, par. 6. That it is

admitted that the charter of this company is a contract, which cannot be affected by provisions of a subsequent constitution or legislative act; and that this has been in terms decided by the supreme court of the United States. Central Railroad & Banking Co. v. Georgia, 93 U. S. 670. That the charter gives no such right as that contended for, and that it does not authorize the holding of these stocks and bonds. Central Railroad & Banking Co. v. Collins, 40 Ga. 583. That so the only controversy presented is as to the construction of a statute of the state of Georgia, and no federal question whatever is at issue. We must look to the record as it comes here, and ascertain the questions involved. No subsequent amendment and no disclaimer in argument can affect them. Crehore v. Railway Co., 131 U. S. 244, 9 Sup. Ct. Rep. 692. The complaint charges that the purchase and holding of the stocks and bonds of the Port Royal & Augusta Railway Company, a rival and competing road, by the Central Railroad & Banking Company, is wholly unlawful, and should be declared void for the reason that its charter does not authorize the same; that is to say, its charter does not authorize it to hold stocks and bonds in a rival and competing road. This shows what was in the mind of the pleader, and is in a measure explained by the next sentence: "That the said purchase and holding is also unlawful, as it is obnoxious to article 4, § 2, par. 4, of the constitution of the state of Georgia," etc. The clear inference is that this article is relied on by the complaint, whatever may be the construction of the charter or of any legislative act.

Does the fact that the state court has construed the charter upon which the question is made prevent this court from putting its own construction? Is this court confined to the single question, does the charter as construed by the state court impair the obligation of a contract? In Stone v. Mississippi, 101 U. S. 816, after citing the great Dartmouth College Case, Waite, C. J., adds this comment:

"It is to be kept in mind that it is not the charter which is protected, but only any contract the charter may contain. If there is no contract there is nothing in the grant on which the constitution can act. Consequently the first inquiry in this class of cases is whether the contract has been in fact entered into, and, if so, what its obligations are."

He then goes on, discusses an act of the legislature of Mississippi, and construes it, notwithstanding the fact that it has been already and in the same case construed by the supreme court of that state. The case of Central Railroad & Banking Co. v. Georgia, 92 U. S. 665, quoted by the plaintiff, went to the supreme court on writ of error. That court construed for itself and overruled the construction of a Georgia statute by the supreme court of that state. It would appear from this that when the protection of the constitution of the United States, article 1, § 10, is claimed, the court will first inquire into the existence of a contract, next into the terms of the contract and its proper construction, and then whether the record discloses an act by the state, either in convention or in the legislature, operating against such contract so ascertained and con-

strued.   There appears to be a federal question here also.   As has been said, the validity or invalidity of these defenses are not now in question.   Southern Pac. R. Co. v. California, *supra.*   See, also, Bradley, J., in Gold, etc., Co. v. Keyes, 96 U. S. 204.   They are made, and are pertinent to the suit.   They are federal questions, and within the jurisdiction of this court.   This leaves this court no alternative.   The motion to remand is refused.