ST. LOUIS MIN. & MILL. CO. v. MONTANA MINING CO., Limited.

(Circuit Court, D. Montana.    October 11, 1906.)

No. 538.

1. COURTS—FEDERAL AND STATE COURTS—RIGHT TO PROTECT—PRIOR JURISDICTION.

A party who has appeared in a federal court, and contested an action therein through both trial and appellate courts, the result being a final judgment against him, will not be permitted to render such judgment ineffectual by instituting and maintaining a new suit in a state court, the purpose of which is to relitigate the questions determined by such judgment with the same adversary.

2. SAME—ENJOINING SUIT IN STATE COURT.

Rev. St. § 720 [U. S. Comp. St. 1901, p. 580], which prohibits a federal court from granting an injunction to stay proceedings in a state court, does not prevent a federal court from enjoining a party to an action before it from prosecuting a suit in a state court when necessary to protect its own prior jurisdiction, or to make effectual its own prior judgment, determining the rights of parties before it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1418.

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

In Equity.    On petition for injunction.

This case has been before the courts a long time, and has twice been considered in its different phases by the Circuit Court of Appeals of the Ninth Circuit Montana Mining Company, Limited, v. St. Louis Mining & Milling Company of Montana, 102 Fed. 430, 42 C. C. A. 415, and St. Louis Mining & Milling Company of Montana v. Montana Mining Company, Limited, 104 Fed. 664, 44 C. C. A. 120, 56 L. R. A. 725. The action at law was to recover damages for trespass upon a vein, the apex of which lies inside the surface lines of the St. Louis mining claim, but which vein in its downward course departed from a perpendicular, and crossed the vertical side lines of the St. Louis claim, entering under the surface of the adjoining claim, owned by the Montana Mining Company, Limited, where the trespass upon the vein by the Montana Mining Company is charged to have been committed. Plaintiff alleged ownership of the vein, which it charged defendant extracted ore from.

The defendant, among other defenses, pleaded an estoppel by deed, alleging that plaintiff is estopped from claiming any of the mineral found, or which may hereafter be found, in a certain piece of ground called the "30-foot strip," or "Compromise strip," because about March 7, 1884, one Charles Mayger, who was then and there the predecessor in interest of plaintiff, made, executed, and delivered to William Robinson, James Huggins, and Frank P. Sterling, who were and are the predecessors in interests of this defendant, a bond for a deed, wherein and whereby he covenanted and agreed to convey the said 30-foot strip or compromise ground to the predecessors in interest of this defendant, or their assigns, with all the mineral therein contained: that thereafter, and after the said Charles Mayger had obtained a United States patent for the whole of said St. Louis lode mining claim, including said 30-foot strip or compromise ground, the said Mayger, in order to cheat and defraud the defendant, assumed to convey the said compromise ground to the above-named plaintiff; that thereafter the defendant demanded of and from the said defendant and from the said Mayger a deed for the said compromise ground, in accordance with the terms and provisions of the bond aforesaid, and the said defendant and the said Mayger having refused and declining to make, execute, or deliver such a deed, the defendant thereafter, and on or about the 6th day of September, 1894, commenced an action in the District Court of the First Judicial District of the state of Montana, within and for the county of Lewis

& Clarke, wherein the defendant was plaintiff and the above-named plaintiff, together with the said Charles Mayger, were defendants, to compel the specific performance of the said bond for a deed hereinbefore mentioned and set forth; that thereafter such proceedings were had in said action as that on the 1st day of June, 1895, judgment was duly made and entered therein in favor of the defendant, the plaintiff therein, and against the plaintiff, defendant in said action, whereby, among other things, it was ordered, adjudged, and decreed that the said bond hereinbefore mentioned be specifically performed, and that the defendant, the above-named plaintiff, make, execute, and deliver to this defendant a good and sufficient conveyance in fee-simple absolute, free from all incumbrances, for the premises mentioned and described in the complaint in said action and in the bond hereinbefore mentioned; that in pursuance of said judgment, order, and decree, the said plaintiff, on or about the 1st day of July, 1895, made and executed a deed to this defendant of and for the said premises, and of all the mineral therein contained, and thereafter the said deed was duly delivered to this defendant. And this defendant avers that in and by the said proceedings and the said deed the said plaintiff is estopped from claiming any part of the said compromise ground or 30-foot strip, aforesaid, or my mineral contained therein.

The plaintiff, by replication, denied that it was estopped for any cause. It admitted the execution of the bond, as stated in the answer, and averred that the same was executed and made on account of an application of one William Mayger for a patent to the St. Louis lode mining claim, and on account of an adverse claim interposed by the defendant's predecessor in interest of the said compromise ground, as being a part of what was known as the Nine Hour quartz claim. Plaintiff admitted that Mayger agreed to convey the compromise piece of ground, with all minerals therein contained, to the predecessor in interest of the defendant, and averred that the said claim comprised no minerals contained in or beneath the compromise ground, except such as were contained in leads, lodes, or ledges which had their tops or apexes within the St. Louis mining claim, exclusive of the 30-foot strip or compromise ground. Plaintiff, by replication, further averred that it was seeking to recover only such quartz, rock, or ore, and the value thereof, and the damages for the removal and conversion of the same, as comprised lodes having their apexes within the boundary lines of the St. Louis claim, exclusive of the 30-foot strip or compromise ground. Plaintiff admitted that Mayger received a patent for the 30-foot strip or compromise ground, and alleged that the 30-foot strip or compromise ground was at all times a part and portion of the quartz lode mining claim known as the Nine Hour; that the same was never a part or portion of the St. Louis mining claim; that in the action in the state court wherein the Montana Mining Company was plaintiff, and the St. Louis Company and Mayger were defendants, the action was based upon the agreement mentioned in the answer in said suit, and was brought to compel defendants therein to make a good and sufficient deed for the premises known as the 30-foot strip or compromise ground; that the court found that said strip was at all times a part of the Nine Hour mining claim, and was by the parties to said agreement agreed to be a part thereof; and that the said agreement was made for the purpose of settling and determining a boundary line between the Nine Hour mining claim and the St. Louis mining claim, which had been in controversy; but that the deed conveyed no other title than such as was attached and incident to the said 30-foot strip or compromise ground, and that the minerals therein contained were intended to comprise, and did comprise, all such minerals as were contained in veins, lodes, or ledges having their apexes inside of the 30-foot strip.

A reference to the cases reported and heretofore cited will show that the principal controversy between plaintiff and defendant in the action in trespass in the Circuit Court was whether the deed executed and delivered by the plaintiff on the 1st of July, 1895, conveying the 30-foot strip or compromise ground to the defendant, included the extralateral right of a vein apexing within the boundaries of the St. Louis claim, but passing on its downward course beyond the vertical side line of such claim into the 30-foot strip or compromise ground. There was also involved a question of the exact extent of

the extralateral right, inasmuch as the vein had a width of about 25 feet, and crossed the vertical side line at an angle.

The issues thus generally stated were tried in the Circuit Court of the United States for the District of Montana in August, 1905, and verdict rendered in favor of plaintiff, upon which a judgment was entered for $195,000. The Montana Mining Company, Limited, appealed to the Circuit Court of Appeals, where upon August 13, 1906, the judgment of the Circuit Court was affirmed. 147 Fed. 897. The Circuit Court of Appeals has consistently upheld the views of the Circuit Court that the conveyance by the St. Louis Company to the Montana Company of the land in controversy, in pursuance of a decree of the state court in Montana, had no other effect than to fix the surface boundary of the side line between the two claims in accordance with the original contention of the grantee, the Montana Mining Company, and did not deprive the grantor of any extralateral right under the ground so conveyed. After the decision of the Circuit Court of Appeals, the St. Louis Mining & Milling Company filed a motion in this court, asking that the injunction which had been granted several years prior, in an action ancillary to the law case, be dissolved, to the end that the St. Louis Mining & Milling Company might be permitted to enter upon and extract mineral from the vein within the compromise strip, but which had its apex within the limits of the St. Louis claim. This motion to dissolve was granted. Thereafter the Montana Mining Company, Limited, applied to the judge of the District Court of the First Judicial District of the state of Montana for the issuance of an order upon the St. Louis Mining & Milling Company to show cause why a writ of injunction should not be issued, restraining the St. Louis Mining & Milling Company and Charles Mayger from asserting any right, title, or interest, of any kind or character, in or to the compromise ground described in the decree made by the state court, heretofore referred to, and entered about June 1, 1895. A temporary restraining order was issued by the state court.

The St. Louis Mining & Milling Company now asks this court for an order requiring the Montana Mining Company to appear and show cause why it should not be enjoined from further prosecuting the application made to the judge of the district court of the state for an injunction against it, and prayer is added for a restraining order, preventing defendant from prosecuting such application for an injunction. The petitioner sets up that by the judgment of this court in the action at law, to which the injunction suit was ancillary, it was adjudged that the conveyance made in conformity with the directions of the judgment referred to in the state court did not convey to the Montana Mining Company, Limited, any part of the vein which had its apex within the surface boundaries of the St. Louis claim, and outside of the compromise ground; but, notwithstanding such judgment by this court, that defendant is now seeking, by application to the state court for an injunction against the St. Louis Mining Company, to obtain a decision of the state court contrary to the decision of the federal court, and contrary to the judgment in the action at law to which the suit in injunction was ancillary.

J. B. Clayberg, M. S. Gunn, and Bach & Wight, for complainant. W. E. Cullen, W. E. Cullen, Jr., and E. C. Day, for defendant.

HUNT, District Judge (after stating the facts). The decree in the specific performance suit, made June 1, 1895, in the district court of the state, did not determine what extralateral rights the owners of the St. Louis claim had beneath the surface in the compromise strip. It appears very plainly that the owners of the adjoining claim were not assailing such extralateral rights in the specific performance suit referred to, and that "the purpose of that action was to fix a boundary line between the two mining claims, reserving to each claim the rights that would have attached if the boundary line had been settled without controversy." Montana Mining Company, Limited, v. St.

Louis Mining & Milling Company of Montana, 102 Fed. 430, 42 C. C. A. 120, 56 L. R. A. 725. Such is the language of the Court of Appeals in its opinion, and so free from ambiguity is it that the argument of defendant that the decree made by the state court determined that this defendant has a right to mine the ground in controversy in the law suit, No. 291, in the federal court, and that plaintiff herein has not such right, cannot possibly be sustained. It was by the litigation in this court that afterwards there was a trial of the question of ownership and title to the portion of the Drum Lummon vein which had its apex within the limits of the plaintiff's St. Louis claim, and which extended downward beneath the surface of the compromise strip, and it was in this court that the very contention that is now made, as to the force of the judgment in the specific performance suit, was earnestly put forward by way of a plea in bar, and it is in the federal courts that that contention has been invariably held unsound, whether presented before the trial court or the appellate tribunal of the Ninth Circuit.

The parties voluntarily submitted themselves to the jurisdiction of the federal court in the law action, No. 291, and have sought the equitable aid of the same court to protect the identical property involved in the law action. They have contested the right of plaintiff to mine in the compromise strip, and it is not for the Circuit Court now to deny its jurisdiction to have tried the questions it did try, or to decline to act in the ancillary action.

Judge Hawley, in one of his vigorous opinions (Rogers v. Pitt, 96 Fed. 668), used this language, which is most pertinent to the case at bar:

"Whatever the rights of the defendants may have been at the time of the institution of the suit in this court, if they had taken proper steps to stay the proceedings in this court, as a matter of comity between the state court and this court, it is clear to my mind that, by coming into this court after service of process upon them, and submitting themselves to its jurisdiction, they waived their rights to have the case tried in the state court. The defendants ought not, after voluntarily submitting themselves to the jurisdiction of this court, and contesting the proceedings herein, and obtaining what they deemed to be an adverse ruling, to them endeavor to have a change of the place of trial, and take their chances in another court, on the ground that they might have brought the complainant within the jurisdiction of the state court had they taken the necessary steps so to do."

So I regard the jurisdiction to hear and decide the law action as having been complete, and the question of jurisdiction as concluded and beyond successful dispute.

Jurisdiction to try title to the ground in controversy in the action at law having existed in this court, and the questions presented in action No. 291 having been alone tried herein, it is the duty of the federal court to sustain its judgment, as affirmed by the federal court of appeals; and, if necessary to make the decree dissolving the injunction in the ancillary suit brought in this court effectual, this court has the power to restrain the defendants from proceeding to prosecute the application for an injunction now pending in the state court, which, if granted by the state court, would prevent plaintiff from mining the identical ground that, by the judgment of the court of appeals, belongs

to it, and which it has a legal right to mine. The effect of an injunction by the state court would be to render ineffectual the judgment of the United States Circuit Court of Appeals in a case over which it had and exercised jurisdiction.

But it is said that injunction against the defendant herein by the federal court is not the proper remedy, inasmuch as section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 580] forbids a federal court to grant a writ of injunction to stay proceedings in a state court. If the question presented by the learned counsel for defendant were before the court as res integra, its manifest importance would make decision far more difficult than it now is; for the courts of the two jurisdictions, federal and state, must be permitted to exercise their full powers, without interference with one another and without conflict. Fortunately this principle is so generally adhered to that encroachments seldom occur, and I have no doubt that its obvious wisdom would be found the basis for perfect accord between the federal and state courts in this matter, should the learned judge of the state court be called upon to examine the whole record in this case, and to decide as to his course in the premises. But the present petition for injunction to restrain the defendants being now before the federal court in which the law action between these parties was decided, and in which the injunction issued in the ancillary suit was dissolved, after the judgment of this court was appealed from and affirmed, the duty of the federal court is to act in aid of its own jurisdiction, and to render its decree effectual, retaining jurisdiction for all purposes within the general scope of the equities to be enforced in the suit ancillary to the law action tried.

The Supreme Court of the United States has laid down the doctrine which this court must follow: In Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 624, where a sheriff was proceeding to sell property which had been conveyed by a decree of the federal court, and where the contemplated action of the sheriff had the effect of annulling and setting aside the decree of the federal court, the Supreme Court said in such a case a supplemental bill could be filed in the federal court, with a view to protecting the prior jurisdiction of such court, and rendering effectual its decree. "In such cases," said the court, "where the federal court acts in aid of its own jurisdiction, and to render its decree effectual, it may, notwithstanding section 720, Rev. St., restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction." To sustain this rule Justice Day cites French v. Hay, 22 Wall. 250, 22 L. Ed. 799. In that case the appellant argued to the Supreme Court, as does the defendant before this court, that under section 720 injunction would not lie when issued by a federal tribunal against a party suing in the courts of the state. But the Supreme Court refused to sustain the reasoning of the appellant, and said:

"Having the possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be detemined in it, until it reached its termination, and the jurisdiction was exhausted. While the jurisdiction lasted, it was exclusive, and could not be trenched upon by any other tribunal."

The court also speaks of the results which would follow if relief could not be given by the federal tribunals where their jurisdiction attached, and demonstrates that their decrees might be nullified, in so far as any protection could be given by them. "Instead of terminating the strife between him and his adversary, they would leave him under the necessity of engaging in a new conflict elsewhere. This would be contrary to the plainest principles of reason and justice. The prohibition in the judiciary act against the granting of injunctions by the courts of the United States, touching proceedings in state courts, has no application here. The prior jurisdiction of the court below took the case out of the operation of that provision." This decision is applicable, because, as heretofore stated, it was in this (the federal) court that the right of the parties to mine the ground involved in the law action in this court was involved; there never having been, as indicated, any issue in the state court wherein such right was adjudicated. In Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, Justice Woods, for the court, expressly stated that "a court of the United States is not prevented from enforcing its own judgments by the statute which forbids it to grant a writ of injunction to stay proceedings in a state court." In that case the action of the Circuit Court of the United States enjoining appellants from proceeding in an action at law brought on a replevin bond was sustained. Again, in the very recent case of Riverdale Mills v. Manufacturing Company, 198 U. S. 188, 25 Sup. Ct. 629, 49 L. Ed. 1008, the Supreme Court, through Justice Brewer, reversed the Circuit Court of Appeals of the Fifth Circuit, and affirmed the order of the Circuit Court granting an injunction preventing defendant from prosecuting a suit instituted in the courts of the state of Alabama. The effect of section 720, Rev. St., was considered, and it was distinctly held that:

"A federal court, exercising a jurisdiction apparently belonging to it, may thereafter, by ancillary suit, inquire whether that jurisdiction in fact existed. It may protect the title which it has decreed as against every one a party to the original suit, and prevent that party from relitigating the questions of right which have already been determined."

The cases cited are authority for issuing the injunction prayed for in this proceeding. They demonstrate that, as incidental to a case to which the constitutional and statutory powers of the federal courts are extended, injunctions to restrain parties from proceeding in state courts will lie, and are not infrequently issued. They further establish that section 720 was not intended to impair the jurisdiction of the federal courts, as that jurisdiction had been conferred by the Constitution and laws, which empower courts of equity to interfere and effectuate their own decrees by injunction or writs of assistance, in order to avoid the relitigation of questions once settled between the parties. Story's Equity Jurisprudence, § 959; Central Nat. Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Foster's Federal Practice, § 211; Desty's Fed. Procedure, vol. 2, p. 803.

The substantial rights of the parties in the law action having been litigated in the federal courts, I am of the opinion that the duty of this court is to uphold its jurisdiction in the ancillary suit by issuing the injunction prayed for.