**PUGET SOUND POWER & LIGHT CO. v. ASIA et al.**

(District Court, W. D. Washington, N. D. March 12, 1921.)

No. 236.

1. **Courts ⚌508(1)—Application for injunction to restrain prosecution of suit in state court denied.**

An application by the complainant, in a suit in the federal court for an injunction to restrain prosecution of a suit in a state court, denied where the subject-matter of the two suits was not the same and the judgment of the state court could not affect the rights of complainant nor the granting of the relief prayed for in its suit.

2. **Courts ⚌508(1) — Federal courts without power to enjoin suit in state court except for protection of its own prior jurisdiction.**

Under Rev. St. § 720 (Comp. St. § 1242), a federal court is without power to grant an injunction to stay proceedings in a state court except for protection of its own previously acquired jurisdiction over the subject-matter of the two suits.

See, also, 271 F. 958; 277 F. 1; 282 F. 712; 300 F. 441, 443; 2 F.(2d) 491.

The plaintiff alleges diversity of citizenship and disputable matter involving "many million dollars," and that March 31, 1919, it sold and delivered a certain street railway system to the city of Seattle in accordance with provisions of Ordinances Nos. 39025, 39069, 39070, and 39071 of said city; that in payment for such railway system the city delivered $15,000,000 of "Seattle Municipal Railway Bond, 1919" bearing 5 per cent. per annum interest, payable semiannually, which bond contained the following provision:

"The city of Seattle hereby covenants with the holder of this bond that the city of Seattle will keep and perform all of the covenants and conditions and promises in said ordinance contained to be by it kept and performed. The city of Seattle and corporate authorities have provided for the payment of the amount or proportional part of the revenues of the municipal street railway system previously pledged as a fund for the payment of bonds, warrants or other indebtedness, and after having so provided do hereby irrevocably obligate and bind the city to pay into the special fund created by the ordinance authorizing the issuance of this bond, and out of the gross revenues of such municipal street railway system and all additions and betterments to and extensions of such system hereafter acquired, even though the balance of such gross receipts hereafter remaining may be insufficient to pay the cost of maintaining and operating said system and said additions and betterments thereto and extensions thereof, a sum equal to five per cent. (5%) per annum, payable semiannually, on all unpaid bonds of the issue of fifteen million dollars ($15,000,000.00), to be issued under said ordinance and pursuant thereto, and beginning with March 1, 1922, and annually on the first day of March thereafter, to and including March 1, 1938, the additional sum of eight hundred thirty-three thousand dollars ($833,000.00), and on March 1, 1939, the additional sum of eight hundred thirty-nine thousand dollars ($839,-000.00), on which date all of such bonds, together with the interest thereon shall be fully paid."

It is alleged that Ordinance 39025 "obligates the city of Seattle out of such gross revenues to pay into the special fund for the purpose of paying the interest on such bonds

and the principal, as interest and principal mature, sums equal to such interest and principal thirty days prior to the date when such interest and principal are made payable"; that gross revenues from the operation of the municipal street railway system sufficient to pay all charges upon such indebtedness have been received; .that there will be due March 1, 1921, the sum of $375,000, "which sum the city will pay unless by reason of the acts of the defendants the city is induced or compelled to breach its contract and default in the payment of such interest * * *"; that the plaintiff at the time of transfer deposited the bonds with the Old Colony Trust Company and Boston Safe Deposit & Trust Company, of Boston, Mass., as collateral security for indebtedness covered by a mortgage upon the railway system which was released for the purpose of transferring clear title; that if the payment of interest is defaulted irreparable injury will be occasioned to the plaintiff because of such defaulted bond, and that it has no adequate remedy; that the defendants have confederated and combined together to bring about a breach of the contract and a default on' such bonds, and that if default is made "the market value of such bonds will be decreased many millions of dollars"; that defendants have instituted a suit against the city of Seattle and the treasurer and city comptroller in the superior court of the state of Washington, but that plaintiff is not a party, and the said court has not jurisdiction of the plaintiff nor of the subject-matter of such suit, the Supreme Court of the state having entered judgment and decree in favor of the plaintiff. on the subject-matter against one Twichell, plaintiff, and Morton, intervener, representing taxpayers of the city. It is then alleged that the plaintiff has instituted suit in this court against the city, its comptroller, and its treasurer, and caused process to issue on a complaint filed, requiring payment into the special fund pledged for the payment of the $15,000,000 bond issue, which has not been done as by ordinance provided; that the defendants will attempt to defeat the jurisdiction of this court by joining the plaintiff as defendant in the state court, and that it is necessary for this court to protect its jurisdiction and save the plaintiff from irreparable damage which a default by the city would occasion, and that a temporary restraining order issue; that an emergency exists and notice cannot be given. Affidavit was filed in support of the complaint; a preliminary injunction was issued on the 21st of February to remain in force until February 28th, when application for temporary injunction would be heard.

On the hearing the defendants filed an affidavit denying that they have confederated or combined to bring about a breach of contract between the city and the plaintiff, and denied that the market value of the bonds of the plaintiff have been damaged on account of any conduct of the defendants, and allege "that the intent and purpose of said action was to restrain said city and its officers above named from using the general funds of said city of Seattle in order to pay the costs of maintaining and operating the municipal street railway system, and to pay out of the general funds of said city any portion of the bonds issued by said city to pay for said street railway system"; that the complaint in the state court was duly filed, summons issued and served upon the city, its treasurer and comptroller; that the defendants had duly entered their appearance, filed a motion and demurrer, which were fully argued, same being resisted by the defendants; that at the hearing this plaintiff had a court reporter taking the proceedings, and had notice of such proceeding; that this plaintiff was not a necessary party to the state court proceeding and that the defendants had not and do not design to make this plaintiff a party to said state court action; that the interest due on March 1st, $375,000, upon $15,000,000 municipal street railway bonds, had been transmitted by the city of Seattle to the parties authorized to receive the same; and that all of the proceedings in the state court were had prior to the institution of any suit in this court.

Upon the hearing of the application it was stated by the plaintiff that the interest due March 1, 1921, had been paid. The complaint in the state court of these defendants, introduced on this hearing, after qualifying as parties in interest; recited the history of negotiations and purchase by the city from the plaintiff of the municipal street railway system owned by the plaintiff, pleading the several ordinances supra, and that "the proposition of acquiring the street railway system from said traction company was at no time, as provided by law, submitted to the voters of said city for their ratification or approval, nor have either of the ordinances hereinbefore referred to, nor the contract between said city and said traction company hereinbefore mentioned ever been submitted to the voters of the city for their ratification or approval, nor has said transaction or any part thereof been legally submitted to or received the ratification or approval of the

voters of the city, or any part thereof. It is alleged "that at the time of the transfer of possession of said street railway system to said city, a five-cent fare was being charged for each ride, which fare was raised, on or about the 29th day of June, 1920, to four rides for twenty-five cents, and thereafter, on January 8, 1921, said fares were raised to ten cents for a single fare or three fares for twenty-five cents, which is the rate now charged, and which is as high a rate as it is practicable to charge; that at the time of the transfer of possession of said street railway system as aforesaid, the roadbed, tracks and rolling stock constituting said system were in a depreciated, run down, and out of repair condition, and on account of such condition, at all times since acquiring said system it has been and now is impossible to maintain and operate said system so as to pay in addition to the cost of necessary repairs, maintenance, operation and replacements, any portion of the principal of said bonds; that said defendant city * * * realizing it was impossible to pay the interest and principal on the said bonds as they became due unless a substantial portion of the cost of operating and maintaining said road was diverted from the general fund, and with the design to indirectly charge the cost of acquiring said system to the general fund, unlawfully and wrongfully charged a large portion of the cost of operating and maintaining said system to other departments of the city and paid such costs out of the general fund. That there was so charged to other departments and paid out of the general fund in the year 1919 the sum of $105,720.01, and in the year 1920 the sum of $117,803.78, no part of which sums has been repaid to said general fund, and in addition to the above amounts, said city on December 23, 1920, for the purposes aforesaid, illegally and unlawfully appropriated and diverted from the general fund of said city the further sum of $85,000, no part of which has been repaid to said general fund, such diversion having been made for the express purpose of securing sufficient funds to pay the interest due on said bonds; that the said city * · * and the defendant city comptroller has estimated that amount so to be charged to other departments during the year 1921, and paid out of the general fund, will be and is the sum of $182,777.04, no part of which the city contemplates repaying to said general fund." That the city treasurer pays into the "special bond fund" an average of $18,000 per day received from the conductors and other employees of the railway system, being the gross receipts, and no other funds in the city are available for the payment of wages and motormen, conductors, and other employees of the street railway system; that the maintenance approximates $150,000 a month; that the wages of the motormen, laborers, and employees are paid by the issuance of warrants which the various recipients are obliged to sell in the open market and are circulated as a claim against the city of Seattle and recognized by the city as valid claims payable in the future; and that by reason of the constitutional limitations of Seattle relating to municipal indebtedness and the provisions of sections 8005–8006, Rem. Code 1915, such sums are not a charge upon the general fund, and that the defendants in said action threaten, and intend unless restrained, to use the money out of the general fund of the city for the purpose of paying principal and interest of said bonds and have threatened and will pay the principal and interest of said bonds ahead of the cost of operating and maintaining said street railway system, and have refused to provide any funds whatever to meet depreciation charges or the cost of replacements and betterments, and will continue to use the general funds for the purpose of paying portions of the expense of operating and maintaining said system.

At bar it was stated by the plaintiff that it was not seeking to charge the general fund of the city for payment of principal and interest of said bond issue, but only to preserve the gross revenues of said "special bond fund" to the extent of accruing interest and principal as by ordinance provided. The defendants stated that it was not their purpose to interfere with the payment of the interest and principal as by ordinance provided, but to prevent the appropriation by the city of funds out of the general fund for the payment of any of the charges not authorized by the law under which the municipal railway system was acquired, unless the matter is submitted to the qualified electors of the city and such payment authorized as by law stipulated.

James B. Howe and Hugh A. Tait, both of Seattle, Wash., for plaintiff.

Chadwick, McMicken, Ramsey & Rupp, Tucker & Hyland, and Preston, Thorgrimson & Turner, all of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). The rights for all parties to this proceeding are fixed and limited by the provisions of sections 8005–8008,

Rem. & Bal. Code of Wash. Section 8005 authorizes the acquiring of a public utility. Section 8006 provides the method of procedure when it is deemed advisable to purchase any public utility mentioned in 8005, and if in the acquisition a general indebtedness is to be incurred: "Such proposition shall be adopted and assented to by three-fifths of the qualified voters of the said city or town voting at said election." Such proceedings were had by the city under its charter provisions and the sections of the statute, supra, that ordinances were enacted for the purchase of the street railway lines of the plaintiff company in which in Ordinance 39025 is the following provision: "Said bonds shall be an obligation only against the special fund created and established in section 5 of this ordinance."

Section 5 creates a special "Municipal Street Railway Bond Fund, 1919," and provides for the payment into this fund of the gross revenues of the street railway system, and in the form of the proposed bonds set out in the ordinance appears "payable solely out of the special fund of the city of Seattle known as the Municipal Street Railway Bond Fund, 1919."

Section 8008, provides:

"In creating any such special fund * * * the common council * * * shall have due regard to the cost of operation and maintenance of the plant or system * * * and shall not set aside into such special fund a greater amount or proportion of the revenue and proceeds than in their judgment will be available over and above such cost of maintenance and operation. * * *"

By section 6, Ordinance 39025, it is provided that the city "does hereby irrevocably obligate and bind itself to pay into such fund out of the gross revenues of the municipal street railway system the necessary amounts to meet interest and principal payments upon the bonds as they mature, * * * and such fixed amounts out of such gross revenues are hereby pledged to such semiannual payments of interest and such annual payments of principal, and shall constitute a charge upon such gross revenues superior to all other charges whatsoever, including charges for maintenance and operation."

The Supreme Court in Twichell v. Seattle, 106 Wash. 32, at page 49, 179 P. 127, 130, speaking of the "due regard" clause of the statute, says:

"Whether or not the ordinance and bonds provide for a preference in favor of the bonds and interest out of the gross revenues of the system is unimportant to the integrity of the obligations, as demands upon the special fund, because the latter part of section 8008 of the Code covers the matter by providing as follows:

"'When any such special fund shall have been heretofore or shall be hereafter created and any such obligation shall have been heretofore or shall hereafter be issued against the same, * * * a fixed amount without regard to any fixed proportion, of revenue shall be set aside and paid into said special fund as provided in the ordinance creating such fund, and in case any city or town shall fail to thus set aside and pay said fixed proportion or amount as aforesaid, the holder of any bond or warrant against such special fund may bring suit or action against the city or town and compel such setting aside and payment.'"

Having in mind the limitations of section 8008 supra, which among other things provides, "The * * * corporate authorities shall have power to create a special fund or funds for the sole purpose of defraying the cost of such public utility or addition, betterment or extension thereto, into which special fund or funds the * * * corporate authorities of such city or town may obligate and bind the city * * * to set aside and pay a fixed proportion of the gross revenues of such public utility, * * *" it seems clear that the obligation of the ordinance, supra, is limited to the special fund.

[1] An examination of the issue in the state court cause and the cause pending in this court show that the issues are several, separate, and distinct. The provisions of the statute under which the utility was acquired did not obligate the general fund of the city to the payment of any portion, and the obligation of the city is distinctly limited to the special fund. Clearly the recourse of the plaintiff is to maintain the integrity of the special fund. It is stated that the design and purpose of the plaintiffs in the state court, defendants here, is to preserve the general fund from invasion for the purpose of repleting the special fund for any purpose. The prayer of the complaint in the state court, it is stated, is out of harmony with the contentions of plaintiff at bar. The prayer in the complaint usually controls as to the relief demanded within jurisdictional facts well pleaded. An examination of the complaint, I think, discloses that the only facts well pleaded within the jurisdiction of that court are facts going to the integrity of the general fund and cannot be said to be an attack upon the integrity of the special fund devoted to the purposes which have been

pleaded within the limitations of section 8008 as construed and applied by the Supreme Court in Twichell v. Seattle, supra. The payment of the interest by the city of Seattle maintaining the integrity of the plaintiff's security has removed the contingency which no doubt caused the plaintiff to move in this cause, and this was done without any order or suggestion from this court. The special and general funds are as separate and distinct as are two separate sections of land. A mortgage on one may not be said to cover the other. An action against one may not be said to involve both. To maintain the integrity of the special fund as pledged to plaintiff's security the action is instituted in this court. The existence, maintenance, and integrity of the special fund is provided by the sections of statute and ordinances supra, and is supplied from the revenues of the Seattle Municipal Railway. The motion of the state court is to maintain and preserve the integrity of the general fund, which is supplied by general taxation, the disbursement of which is provided by statute, from which it is alleged the defendant city without authority has diverted many thousand dollars to the special fund and is threatening to divert further sums to the special fund without first submitting the matter of payment to the electors of the city. The state court had jurisdiction of the subject-matter of the general fund and of the real parties; whether this plaintiff is a proper or necessary party it is not necessary here to decide.

[2] Section 720, Rev. St. (Comp. St. § 1242):

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Federal courts may not interfere by injunction or otherwise with the proceedings of the state courts which have first acquired jurisdiction of the subject-matter. Swift v. Black Panther Oil & Gas Co., 244 F. 20, 156 C. C. A. 448.

In Lang v. Choctaw, O. & G. R. Co., 160 F. 355, at page 359, 87 C. C. A. 307, 311, the rule is thus stated:

"The court which first acquires jurisdiction * * * by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal. Farmers' Loan & Trust Company v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667. * * * The jurisdiction of a court over a subject-matter or a cause once lawfully acquired includes the power to enforce its judgment or decree, and to protect the title of those holding under it from every attempt to avoid or annul it. Chicot Co. v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546."

The controversy in this court is distinct from that in the state court. The scope and purpose of each fund in litigation is fixed and limited. De La Vergne Ref. Mach. Co. v. Palmetto Brewing Co. (C. C.) 72 F. 579; Knudsen v. F. T. & S. Bank, 245 F. 81, 157 C. C. A. 377.

Comity and the necessity of avoiding conflict between state and federal courts where possible imperatively demands that such power shall be exercised with the greatest caution, and only after the most careful consideration and abiding conviction that its exercise cannot be avoided under the rules of law enunciated by the courts of last resort.

Jackson v. Parkersburg & O. V. Ry. Co. (D. C.) 233 F. 764:

"The right must be clear, the injury impending, and threatened so as to be averted only by the protecting preventive process of injunction." Truly v. Wanzer et al., 5 How. 141, 143, 12 L. Ed. 88; Irwin v. Dixion, 9 How. 10, 13 L. Ed. 25.

The Court of Appeals of the Fifth Circuit in Oliver v. Parlin et al., 105 F. 272, at page 276, 45 C. C. A. 200, 203, said:

"An examination of the cases * * * will show that in every well-considered case, when an injunction restraining already instituted proceedings in a state court has been issued by a United States court, it was either based on a decree or judgment of the United States court which it was necessary and proper to enforce; or, if issued prior to judgment or decree, it was directed against a party who, after jurisdiction over him and the cause was fully vested, had resorted to proceedings in the state court necessarily conflicting with, if not ousting, the jurisdiction of the United States court. See Shoemaker v. French, Fed. Cas. No. 12,800; Sharon v. Terry (C. C.) 36 F. 337; Mutual Life Ins. Co. v. University of Chicago (C. C.)

6 F. 443; Railroad Co. v. Kuteman, 4 C. C. A. 503, 54 F. 551; Abeel v. Culberson (C. C.) 56 F. 333; President v. Merritt (C. C.) 59 F. 7."

The Court of Appeals of this circuit, in Mills v. Provident L. & T. Co., 100 F. 344–347, 40 C. C. A. 394, indorsed the sentiment that section 720, Rev. St., was passed to prevent unseemly conflict of courts of different sovereigns exercising concurrent jurisdiction over the same territory, and that the purpose of the statute is so important that a liberal construction should be given to accomplish it.

The prohibition extends to parties engaged in proceedings in state courts. Cœur d' Alene Ry. & Nav. Co. v. Spalding, 93 F. 280, 35 C. C. A. 295, writ denied, 174 U. S. 801, 19 S. Ct. 884, 43 L. Ed. 1187; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841. Also, orders entered by the federal court which necessarily have that effect. W. U. T. Co. v. L. & N. R. Co., 201 F. 919, 120 C. C. A. 257; Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345.

The language employed by the Court of Appeals of the Third Circuit in Essanay Film Mfg. Co. v. Kane, 264 F. 959, at page 960, has application to this case:

"The sole purpose of the bill is to obtain an injunction to prevent the defendant proceeding in the state court. The practical effect of such injunction would be to enjoin the state court from proceeding in the action. Such an injunction, except under the Bankruptcy Act (Comp. St. § 9585 et seq.), no court of the United States can grant. With this exception it is expressly forbidden by statute. Judicial Code, § 265; Diggs v. Wolcott, 4 Cranch, 179, 2 L. Ed. 587; Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644. The ban of the statute is not evaded by directing the injunction to the litigating party. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Cœur d'Alene Ry. & Nav. Co. v. Spalding, 93 F. 280, 35 C. C. A. 295. This rule is not modified by Simon v. Southern Railway Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492. The crux of that decision, as we understand it, is embodied in the following sentence appearing on page 124 of 236 U. S., on page 258 of 35 Sup. Ct. (59 L. Ed. 492): 'But when the litigation has ended and a final judgment has been obtained—and when the plaintiff endeavors to use such judgment— a new state of facts, not within * * * the statute, may arise.' "

This action clearly is ancillary to or in aid of the suit for "specific performance."

No right to relief other than by way of an injunction is sought. "Such an injunction, as stated, except under the Bankruptcy Act, no court of the United States can grant." Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644; Hull v. Burr, 234 U. S. 712, 34 S. Ct. 892, 58 L. Ed. 1557.

Rodgers v. Pitt (C. C.) 96 F. 668, affirmed Pitt v. Rodgers, 104 F. 387, 43 C. C. A. 600, was an equitable action, adjudicating rights between the parties upon the same subject-matter, pending in the state and federal courts, of which the federal court had first obtained jurisdiction of the parties by provisions of a Nevada statute, and the subject-matter and the order of injunction issued out of the action in which the subject-matter was litigated.

In St. Louis M. & M. Co. v. Montana M. Co. (C. C.) 148 F. 450, the court held that a party may not appear in court and wage a contest through the nisi prius and appellate courts to judgment against him and render such judgment ineffectual by instituting a new suit in a state court with a view of relitigating the question of such judgment.

In Miller & Lux v. Rickey, 152 F. 11, 81 C. C. A. 207, the federal court in Nevada acquired jurisdiction by suit to quiet title to an appropriation of water to a stream in that state, as against defendant a resident of California. The court maintained such jurisdiction as against subsequent similar action brought by the defendant against the same parties in the state court of California. The court having jurisdiction of the parties, the res—the land—protected its jurisdiction against the encroachment, and held that it was immaterial whether the encroachment was from within or without the state. The right asserted was in the action seeking equitable rights and not in an ancillary proceeding.

In Kansas City Gas Co. v. Kansas City (D. C.) 198 F. 500, the court held that the enforcement of a municipal ordinance purporting to be an exercise of the police power will be enjoined where it is unequal, unjust, or altogether unreasonable, where obedience would require an expenditure which would render its operation confiscatory or it impairs the obligation of a contract under the mere guise or pretext of contributing to the public safety, health, and welfare which it is not adapted or intended to secure, and the courts will go behind its letter for the purpose of determining its real substance and effect.

Allington & Curtis Mfg. Co. v. Booth, 78

F. 878, 24 C. C. A. 378, is a patent case and has no application to this issue.

City of Newton v. Levis, 79 F. 715, 25 C. C. A. 161; Allison v. Corson, 88 F. 581, 32 C. C. A. 12; Indianapolis Gas Co. v. City of Indianapolis (C. C.) 82 F. 245; Charles v. City of Marion (C. C.) 98 F. 166 —are cases involving the validity of municipal ordinances, not a state statute, and have no application to the issue at bar.

There is no controlling force in the statement that the state court is without jurisdiction and should be enjoined. The presumption is that the state court will only act within its jurisdiction, and if it does proceed without jurisdiction, its decree will be a nullity, and if it is sought to enforce such decree, as said by the Circuit Court in Essanay Film Mfg. Co. v. Kane, supra, a new state of facts not within the language of section 720, Rev. St., may arise. This appears to be in harmony with Wells Fargo & Co., Petitioner, v. Taylor (December 6, 1920) 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205.

The motion for temporary injunction must be denied.